ESTATE OF ELLA PFEIFER, DECEASED, THOMAS T. SCHLAKE, EXECUTOR, ET AL.,[1] PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5657–75, 5959–75, 6138–76, 6139–76.     Filed November 28, 1977.

*Warren C. Seieroe, Walter S.Carr,* and *Harry B. Holmes, Jr.,* for the petitioners.

*Harmon B. Dow,* for the respondent.

## OPINION

FEATHERSTON, *Judge:* In these consolidated cases,[2] respondent

---

[1] The following cases are consolidated herewith: Estate of Louis E. Pfeifer, deceased, Harris Trust & Savings Bank, executor, docket No. 5959–75; Harris Trust & Savings Bank, trustee of the marital trust created under the will of Louis E. Pfeifer, transferee, docket No. 6138–76; and Harris Trust & Savings Bank, trustee of the residuary trust created under the will of Louis E. Pfeifer, transferee, docket No. 6139–76.

[2] Consolidated herewith are two cases (docket Nos. 6138–76 and 6139–76) in which transferee liability has been determined against the trustee of two separate testamentary trusts, as transferee of assets of the estate of Louis E. Pfeifer. However, such trustee has now stipulated that it will be liable, as trustee-transferee, for any estate taxes finally adjudged to be due from the estate of Louis E. Pfeifer.

determined deficiencies in the estate taxes of the estate of Ella Pfeifer in the amount of $43,539.58 and the estate of Louis E. Pfeifer in the amount of $49,823.41. Certain issues having been disposed of by the parties, the issues remaining for decision are:

(1) Whether the estate of Louis E. Pfeifer, from which decedent's surviving spouse was given a life estate in certain property with a general testamentary power of appointment, is entitled to a charitable deduction under section 2055(b)(2)[3] for the remainder interest to be appointed to charity as well as to a marital deduction under section 2056(b)(5) in respect of the entire value of the property so given.

(2) If a deduction is allowable under section 2055(b)(2) to the Estate of Louis E. Pfeifer, whether a charitable deduction is also allowable under section 2055(b)(1) to the Estate of Ella Pfeifer upon her subsequent death and exercise of the power of appointment in favor of charity.

Louis E. Pfeifer (hereinafter Louis) and Ella Pfeifer (hereinafter Ella) were husband and wife at the time of Louis' death. Louis died testate on May 21, 1969; Ella was then 85 years old. Ella died testate on April 7, 1971. Harris Trust & Savings Bank, Chicago, Ill., was the executor of Louis' estate and is trustee of the marital trust and the residuary trust created under Louis' will. Thomas T. Schlake is the executor of Ella's estate, and he was a legal resident of Skokie, Ill., when he filed the petition for Ella's estate. Estate tax returns were filed with the District Director of Internal Revenue, Chicago, for Louis' estate on August 21, 1970, and for Ella's estate on April 7, 1972.

Louis' will, which had been executed on March 31, 1967, was admitted to probate on June 9, 1969. It provided for the creation of a trust for Ella (hereinafter the marital trust) as follows:

SECTION TWO

If my wife survives me, I give to the HARRIS TRUST AND SAVINGS BANK, of Chicago, Illinois, as trustee, property equal in value to fifty (50%) percent of the value of my adjusted gross estate as finally determined for federal estate tax purposes, less the aggregate amount of marital deductions, if any, allowed for such tax purposes by reason of property or interests in property passing or which have passed to my wife otherwise than by the terms of this SECTION.

The executor may satisfy this bequest in cash or in kind, and property

[3]All section references are to the Internal Revenue Code of 1954, as in effect on the dates of death of Louis E. Pfeifer and Ella Pfeifer, unless otherwise noted.

distributed in kind shall be selected in such manner that the cash and other property distributed will have an aggregate fair market value fairly representative of this bequest's proportionate share of the appreciation or depreciation in value to the date, or dates of distribution of all property then available for distribution. Any property included in my estate and used to satisfy this bequest shall be valued for that purpose at the value thereof as finally determined for federal estate tax purposes. No property shall be used to satisfy this bequest as to which a marital deduction is not allowable. This bequest shall abate to the extent that it cannot be satisfied in the manner hereinabove provided.

The trust shall be held as follows:

A. Commencing with my death and during the life of my wife, the trustee shall pay to her the net income from the trust at least annually and in addition such amounts from principal as the trustee from time to time believes desirable for her comfortable maintenance, medical care and welfare, considering her other income known to the trustee.

B. The trustee also shall pay to my wife such amounts from the principal of the trust as she from time to time may direct in writing.

C. On my wife's death, the principal of the trust and all accrued or undistributed net income thereof shall be distributed to or for the benefit of such persons or organizations, including my wife's estate, in such proportions and subject to such trusts and conditions as my wife directs by will specifically referring to this power to appoint.

D. Any principal and any accrued or undistributed net income not effectively appointed by my wife shall be added to the residuary trust established by SECTION THREE hereof, to be administered as a part thereof.

The corpus of the marital trust had a value of $186,719.24 on May 21, 1970, the alternate valuation date for Louis' estate. Section three of Louis' will created a residuary trust for the benefit of certain individuals and charities.

On March 16, 1970, Ella executed an affidavit, pursuant to section 2055(b)(2)(c), in which she declared her intention to exercise her testamentary power of appointment under Louis' marital trust in favor of certain designated organizations, all of which qualified as charitable organizations under section 2055(a)(2). This affidavit was attached to Louis' estate tax return.

Ella died on April 7, 1971, and her will, which had been executed on March 6, 1970, was admitted to probate on November 12, 1971. In her will she exercised her power of appointment in favor of the charitable organizations exactly as she had stated in her 1970 affidavit. Prior to Ella's death no portion of the corpus of the marital trust was distributed to any beneficiary, and upon her death the trust property had a value

of $247,405.54. This amount was included in the value of her gross estate in her estate tax return.

In this case the Court is again called upon to review the consequences of certain seemingly ill-conceived estate tax legislation which, petitioners contend, effectively allows the same interest in property passing to charity to be deducted three times in the two successive estates of certain octogenarians. This precise issue, involving the effect of section 2055(b)(2), has been previously litigated in this Court in the companion cases of *Estate of Edna Allen Miller v. Commissioner*, 48 T.C. 251 (1967), affd. sub nom. *Estate of Hugh Gordon Miller v. Commissioner*, 400 F.2d 407 (3d Cir. 1968), and *Estate of Hugh Gordon Miller v. Commissioner*, 48 T.C. 265 (1967), revd. 400 F.2d 407 (3d Cir. 1968), and the Court of Appeals' opinion in these cases fully supports petitioners' position in the instant case.

## 1. *Louis' Estate*

Louis' estate claims a marital deduction under section 2056(b)(5) for the one-half portion of the adjusted gross estate bequeathed to the marital trust and a charitable deduction under section 2055(b)(2) for the value of the remainder interest in the entrusted property which ultimately passed to the charitable organizations. Petitioners recognize that this position would allow both a marital deduction and a charitable contribution deduction in respect of the same property, but point out that the statutory language has been interpreted by both this Court and the Court of Appeals to allow both deductions. *Estate of Edna Allen Miller v. Commissioner, supra.*

Section 2056(b)(5)[4] provides that, subject to certain conditions,

---

[4] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) Limitation in the Case of Life Estate or Other Terminable Interest.—

\*       \*       \*       \*       \*       \*       \*

(5) Life estate with power of appointment in surviving spouse.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as

if an interest in property passes from the decedent to his surviving spouse (whether or not in trust) and the spouse is entitled to the income for life and has a power to appoint such interest to herself or her estate, the interest qualifies as a marital deduction. Louis' will gave his surviving spouse an interest in trust which meets the section 2056(b)(5) requirements, and respondent does not contend otherwise.

Section 2055(b)(2),[5] as it stood prior to its repeal in 1976, provided that "for purposes of this section," on certain specific conditions, where a decedent has bequeathed to a surviving spouse (who is over 80 years of age) a life interest in trust assets coupled with a general testamentary power of appointment over the remainder, and the surviving spouse agrees to, and does, exercise the power in favor of a charity, the remainder in such assets "shall * * * be deemed a transfer to such [charity] by the decedent."

Louis' will meets all the requirements of section 2055(b)(2). His surviving spouse was given a life interest in the marital trust assets together with a testamentary power of appoint-

---

passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

[5]SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(b) POWERS OF APPOINTMENT.—

(1) GENERAL RULE.—Property includible in the decedent's gross estate under section 2041 (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.

(2) SPECIAL RULE FOR CERTAIN BEQUESTS SUBJECT TO POWER OF APPOINTMENT.—For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemded a transfer to such organizations by the decedent if—

(A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse;

(B) such surviving spouse was over 80 years of age at the date of the decedent's death;

(C) such surviving spouse by affidavit executed within 6 months after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive; and

(D) the power of appointment is exercised in favor of such organization and in the amounts or proportions specified in the affidavit required under subparagraph (C).

The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with.

ment. No part of the trust corpus was distributed during the lifetime of his surviving spouse, and she was over 80 years of age at decedent's death. As indicated above, Ella timely executed the required affidavit, which was filed with Louis' estate tax return, and she exercised the appointment power in favor of the named organizations. Louis' estate thus complied meticulously with the literal language of section 2055(b)(2).

Respondent recognizes that in *Estate of Edna Allen Miller*, *supra*, involving facts similar to those in the instant case, this Court and the Court of Appeals allowed a section of 2055(b)(2) charitable deduction, representing the value of the remainder interest in the corpus of the testamentary trust, as well as a section 2056(b)(5) marital deduction in an amount equal to the value of such trust corpus (including the remainder interest therein). However, respondent makes two arguments to support a contrary conclusion in the instant case: (1) Allowance of the section 2055(b)(2) deduction would permit a double deduction in respect of the value of the remainder interest, and (2) the power granted Ella was a special rather than a general power of appointment and, therefore, does not meet the requirements of section 2055(b)(2).

An examination of the opinions of this Court and the Court of Appeals in the *Miller* case shows that the opinions were written, respecting the double deduction argument, only after exploring almost every possible avenue in an effort to find grounds for a contrary conclusion. The problem is that the language of section 2055(b)(2) is explicit and clear and contains no ambiguities. The skimpy legislative history[6] gives no clue indicating what tax or

---

[6]H. Rept. 2885, 84th Cong., 2d Sess., 1956–2 C.B. 1358, 1359, and S. Rept. 2798, 84th Cong., 2d Sess., 1956–2 C.B. 1360, state the purpose and reasons for the enactment of sec. 2055(b)(2) as follows:

I. PURPOSE OF BILL

The purpose of this bill is to allow a deduction for estate-tax purposes in the case of certain bequests in trust with respect to which no deduction is presently allowable. Under this bill, a deduction will be allowed to the extent that the donee of a testamentary power of appointment over the corpus of the trust declares by affidavit his intention, within 1 year of the decedent's death, to exercise the power in favor of specified charitable organizations and the power is exercised in the manner stated in the affidavit. This bill will apply only if the donee of the power is over 80 years of age at the time of the decedent's death.

II. REASONS FOR BILL

Under present law, a deduction is allowed for estate-tax purposes for the amount of a bequest to a corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * . This deduction also is allowed if an interest passes to such an organization by reason of a disclaimer made before the date prescribed for the filing of the estate-tax

other policy the section was intended to achieve, such as the evil to be remedied, the object sought, and the relationship this section was intended to have to other provisions of the Code. This Court and the Court of Appeals for the Third Circuit concluded that, in such circumstances, there was no alternative but to read and apply the statutory language literally.

In *Estate of Edna Allen Miller v. Commissioner*, 48 T.C. at 264, this Court expressly rejected the double deduction argument as follows:

> We have followed the plain and unambiguous language of the statutes here involved, not because we have attributed to Congress an intent to require a so-called "double deduction," but because we are not convinced by any evidence aliunde the pertinent sections of the Internal Revenue Code that Congress did *not* intend them to mean what they say.

The Court of Appeals for the Third Circuit was even more emphatic in rejecting the "double deduction" and other arguments as follows (400 F.2d at 411–412):

> Applying such a literal interpretation to this case, we agree with the Tax Court in Edna's estate that so many problems are left unsolved and so many solutions are possible for remedying what might be considered the absurd result of the multiple deductions resulting from a literal reading of section 2055(b)(2) that no court should attempt to write what Congress unfortunately omitted or invent the perhaps more rational system that the Commissioner asks the court to supply. And it is equally evident that the cryptic legislative report accompanying passage of the 1956 amendments raises even more possible "solutions" to the "absurd result" of literally applying the badly drafted subsection. For instance, the single example in the Senate Report of the 80-year-old spouse with a short life expectancy, plus the known favored position of charities throughout our Tax Code, may indicate that Congress fully intended double charitable deductions in its 1956 amendment. A great many other practical and legislatively justifiable tax results come to mind, and the statutory patterns for achieving them. This or any other court should consequently hesitate to select the single appropriate statutory scheme,

---

return. In some instances, however, it is not feasible for a legatee to allow a bequest to pass to charity by disclaiming it. For example, in the case of a bequest in trust where the income is payable to the surviving spouse of the decedent for life and the remainder to whomever the surviving spouse may appoint, the holder of the power of appointment could allow the property to pass to charity by disclaiming the power only if a charitable organization was named as the taker in default. This would be the result even if the donee is over 80 years old and has a relatively short life expectancy.

Under this bill, such a donee, if over 80 at the time of the decedent's death, may specify within 1 year after the death of the decedent a charitable organization that will receive a portion of the corpus, and if the power of appointment is actually exercised in the manner specified, the estate of the decedent will receive a deduction for the portion of the bequest which is transferred to the charitable organization in this manner.

particularly when such factors as the age requirement suggest that the "loophole" left open may be used by a very few taxpayers before Congress acts to close it if such is the legislative decision. [Fn. refs. omitted.]

Respondent's argument that section 2055(b)(2) allows a deduction only where the power of appointment is a special power rather than a general power was not made in this Court in the *Miller* case but was considered and rejected by the Court of Appeals (400 F.2d at 411 n. 13).[7] Since the power given Ella was a general power of appointment, the argument goes, section 2055(b)(2) does not apply.

Section 2055(b)(2) provides that to qualify for the deduction the surviving spouse must have a power of appointment over the corpus of such trust exercisable by will "in favor of, among others, organizations described in subsection (a)(2)." Respondent's argument is that the quoted phrase is superfluous if the section had contemplated that a general power of appointment would qualify.

Resondent's position has no support in the legislative history of the section, and we find nothing in other Code provisions which gives it any weight. Quite to the contrary, a power to appoint without restrictions, coupled with a statement that the power extends to the organizations described in section 2055(a)(2), "among others" seems clearly to countenance the possibility of appointment to the estate, or to the creditors of the estate, of the holder of power, which, of course, would make the power a general one. Sec. 2041(b)(1). Carried to its logical extreme, respondent's interpretation of the words "among others" would mean that if a power were specifically exercisable in favor of certain charities *but no* others, it would not qualify for the section 2055 (b)(2) deduction because the language of that section would be deemed to require that the power be exercisable in favor of charitable organizations *and others.*

A more obvious weakness in respondent's argument is that it assumes that a general power[8] may not be accompanied by a lesser power. That is not so. Section 2056(b)(5), for example,

---

[7]In *Estate of Miller v. Commissioner,* 400 F.2d 407, 411 n. 13 (3d Cir. 1968), the Court of Appeals dismissed this argument as "a good example of the myriad acceptable legislative schemes that might be proper, depending upon factors that Congress apparently did not consider in the 1956 amendments," and stated in the related text of its opinion (400 F.2d at 411) that "no court should attempt to write what Congress unfortunately omitted."

[8]A general power of appointment is defined in sec. 2041(b)(1) as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate."

authorizes the marital deduction where the surviving spouse is empowered to appoint "in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others." Section 20.2056(b)–5(g)(5), Estate Tax Regs., states: "If the surviving spouse has the requisite power to appoint to herself or her estate, it is immaterial that she also has one or more lesser powers." Similarly, it would be immaterial if she were forbidden to make appointments to designated persons or organizations. Thus, it is clear that a general power may be accompanied by a lesser power or may be restricted in some respects. We see nothing in the language of section 2055(b)(2) which indicates that a general power to appoint accompanied by a power to appoint to charitable organizations would not meet the section's requirements.

In the instant case, Louis' will empowered his surviving spouse to appoint to her estate. That was a sufficient power to qualify the bequest for the section 2056(b)(5) marital deduction. She was further empowered to appoint to such organizations as her will directed. That was a sufficient power to qualify for the section 2055(b)(2) deduction. Consistent with both the opinion of this Court and that of the Court of Appeals in *Estate of Edna Allen Miller v. Commissioner, supra,* we see no alternative to allowing both deductions.

## 2. *Ella's Estate*

Ella was 85 years of age at Louis' death. In the will which she left at her death on April 7, 1971, she exercised her power of appointment over the corpus of the marital trust by appointing all of such corpus to section 2055(a)(2) charitable organizations. Her estate claims a deduction under section 2055(b)(1) for the value of the marital trust property which passed to such organizations.

Section 2055(b)(1) provides that property includable in the decedent's gross estate under section 2041 (relating to powers of appointment) shall "for purposes of this section, be considered a bequest of such decedent." In other words, if the holder of a testamentary power so exercises that power as to cause the property to pass to a charitable organization, the value of the property passing to the charity is "considered" to be such decedent's "bequest," and his estate is entitled to the charitable

deduction. In the instant case, the marital trust was includable in Ella's estate under sec. 2041 because her deceased husband's will gave her a testamentary power of appointment in respect of it. Since she exercised that power in favor of charities, petitioners argue, her estate is entitled to a charitable deduction.

Ella's case turns on a question of the relationship of section 2055(b)(1) to section 2055(b)(2): Whether the first decedent's qualification for a charitable deduction under section 2055(b)(2) precludes the surviving spouse's estate from a deduction under section 2055(b)(1). In *Estate of Hugh Gordon Miller v. Commissioner*, 48 T.C. 265 (1967), revd. 400 F.2d 407 (3d Cir. 1968), which involved circumstances similar to those presented in the instant case, this Court construed section 2055(b)(1) as the general rule with respect to the allowability of charitable deductions for property includable in a decedent's estate under section 2041. The Court concluded that section 2055(b)(2), on the other hand, was a special and inconsistent rule which, when applicable, would override and preclude operation of the general rule. The Court reasoned that once section 2055(b)(2) operated to "deem" a transfer as having been made by the first decedent, section 2055(b)(1) could not operate to "consider" the "bequest" with respect to the same property to have been made by the second decedent. This Court said (48 T.C. at 269–270):

> Section 2055(b)(2) was enacted as a "Special Rule" long after section 2055(b)(1), which was entitled "General Rule." It states an exception to the general rule which is applicable to a limited category of cases upon the fulfillment of specific conditions, some of which depend on the affirmative acts of a person whose estate would be entitled to a charitable deduction were it not for the application of section 2055(b)(2) thus called into play. Section 2055(b)(2) deems the transfer to the charitable organization, under the special circumstances enumerated therein, to have been made by the original donor of the power of appointment. Under section 2055(b)(1), which states the general rule, the transfer would have been considered a bequest from the donee of the power. Both section 2055(b)(1) and section 2055(b)(2) by their terms are to be applied "for purposes of this section [sec. 2055]." Since section 2055(b)(2) was enacted after section 2055(b)(1) as a "Special Rule" forming an exception to the applicability of the "General Rule" of section 2055(b)(1) and conflicts with it in that section 2055(b)(2) provides that in the special cases covered by it the passing of property is deemded to be a transfer by the donor of the power, rather than considered a bequest by the donee of the power, we conclude that section 2055(b)(2) when properly applied, under the special circumstances enumerated therein, to a transfer pursuant to the exercise of a power of appointment, precludes the application of section 2055(b)(1) to the same transfer. * * *

The Court of Appeals reversed the Tax Court on this issue and pointed out that section 2055(b) refers to two different decedents. Paragraph (1) refers to the decedent, the surviving spouse, who was the donee of a testamentary power of appointment in respect of property which, as a result of such power, is includable in his or her estate under section 2041. The exercise of such testamentary power of appointment by the surviving spouse in such way as to cause the property to be transferred to a charity shall be "considered," under paragraph (1), a "bequest by such decedent." Such bequest thus entitles the estate of the decedent second to die to a charitable deduction. Paragraph (2), on the other hand, deals with the decedent who dies first and refers to the situation where a power of appointment is conferred on the surviving spouse. If the terms and conditions of that paragraph, set forth above in our discussion of Louis' estate, are met and the surviving spouse's will passes the corpus of the marital trust to charity, the first decedent's transfer in trust is "deemed a transfer" to the charitable organizations. The two sections are not mutually exclusive, the Court of Appeals concluded, and their plain language requires allowance of the charitable deduction to both estates.

The Court of Appeals pointed out that the statute contains no suggestion that the tax assessments on the spouses' estates are to be connected or combined in any way. Stating that it disagreed with this Court's conclusion that "a 'special' rule [sec. 2055(b)(2)] used by the family precludes use of a 'general' rule [sec. 2055(b)(1)]," the court added (400 F.2d at 413):

We cannot agree with the Tax Court that such draftsmanship shows an intent to have preclusive interplay between 2055(b)(1) and (b)(2) whenever a given husband and wife have the requisite powers of appointment, and to the contrary think that the phrase "for purposes of this section" (referring to section 2055, see 48 T.C. at 270), appearing in both 2055(b)(1) and (b)(2), if anything, indicates a different statutory pattern, namely that (b)(2) is in addition to (b)(1)—an item of special legislation for certain octogenarians. If Congress so clearly had the intent imputed by the Tax Court, they would have used the phrase "for purposes of this subsection" (referring to "powers of appointment") as they did in the last sentence of subsection (a).

Since we find Congressional guidance certainly no greater with respect to Hugh's claimed deduction than Edna's, we think the decision in Hugh's estate should be reversed. The Commissioner's complaint of "triple deduction" should be addressed to Congress, the only body that can adequately resolve the

complex questions raised by the Miller family and currently unanswered in the "special legislation" of section 2055(b)(2).

On reconsideration of this seemingly ill-conceived statute, we have concluded that the Court of Appeals' analysis and conclusion is sound, and we shall follow it. We reluctantly hold that Ella's estate is entitled to the disputed deduction.

We add that we are sympathetic with respondent's position. Tested by the normal standards of estate taxation, the conclusion we have reached (and that reached by the Court of Appeals in the *Miller* case) would be extremely questionable. But section 2055(b)(2) does not appear to reflect normal estate tax law standards. It may be that section 2055(b)(2) was drafted as a private relief measure,[9] rather than as a provision reflecting general estate tax policy, and that the statutory language adopted was inadvertently broader than necessary to accomplish the intended purpose. Yet as the Court of Appeals pointed out in *Estate of Miller v. Commissioner*, 400 F.2d at 412, "the single example in the Senate Report of the 80-year-old spouse with a short life expectancy, plus the known favored position of charities throughout our Tax Code, may indicate that Congress fully intended double charitable deductions." In any event, neither this Court nor the Court of Appeals has been able to develop an acceptable rationale that would permit us properly to disregard the plain language of section 2055(b)(2).

Finally, we observe that section 2055(b)(2) was recently exorcised from the Code, as part of the so-called "deadwood" repeal provisions[10] of the Tax Reform Act of 1976, Pub. L. 94–455, sec. 1902(a)(4)(A). The repeal was effective in respect of estates of decedents dying after October 4, 1976, however, and does not affect petitioners' liability herein.

In order to reflect the correct amounts allowable as deductions under the sections in question, based upon amounts actually

---

[9] One writer has described the enactment of sec. 2055(b)(2) as intended to provide relief from a $4 million estate planning error on the part of the deceased wife of a former president of a major corporation. P. Stern, The Great Treasury Raid, p.49 (1964).

[10] Secs. 1901 through 1952 of the Tax Reform Act of 1976, Pub. L. 94–455, are referred to as "deadwood" provisions, representing "an attempt to simplify the tax laws by removing from the Internal Revenue Code those provisions which are no longer used in computing current taxes or are little used and of minor importance." S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 529. The House Ways and Means Committee Report described the repealed sec. 2055(b)(2) as "a provision of limited application which is no longer needed." H. Rept. 94–658, 1976–3 C.B. (Vol. 2) 1090.

passing to charity after a will contest, and to reflect certain concessions by the parties,

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

SIMPSON, *J.*, dissenting: No one can really believe that by enacting section 2055(b)(2), Congress intended the results reached by the Court today. In my opinion, results so clearly out of line with the legislative purpose cannot be justified by relying on a literal reading of the statute; nor are we justified in reaching such results merely because this may be the last case to be decided under such statute. Accordingly, I must dissent.

Throughout history, courts have been required to decide whether to apply statutes literally regardless of the consequences, or whether they have a higher responsibility to plumb the legislative purpose and carry it out even though the legislature may have failed to articulate its purpose clearly. In *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 487 (1868), the Supreme Court pointed out that such an issue arose in old Bolognia:

> The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, "that whoever drew blood in the streets should be punished with the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. * * *

In that case, the Court also declared at pages 486–487:

> All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.

In the classic case of *Holy Trinity Church v. United States*, 143 U.S. 457, 458 (1892), the Supreme Court had to construe a statute providing that:

> it shall be unlawful for any person * * * to * * * in any way assist or encourage the importation * * * of any alien * * * into the United States * * * under contract * * * to perform labor or service of any kind in the United States * * *

The Court had to decide whether such statute applied to a

contract of a church to bring an alien into the United States to serve as its minister. As a matter of principle, the Court said at page 459:

It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. * * *

After carefully reviewing the history of the statute, the Court concluded that the agreement to bring a minister into the country was not within the intended purpose of the legislation and held that the statute did not apply.

The cases are legion in which the courts have rejected a literal application of tax statutes when the courts were convinced that such applications did not carry out the intended purpose of the legislation. A well known example of such proposition, decided by the Supreme Court, is *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46 (1955), where the Court held that assets acquired as an integral part of the carrying on of a business were not to be treated as capital assets even though literally they came within the definition of "capital assets." Not long ago, this Court held that the term "liabilities," as used in section 357(c), does not cover all types of liabilities but applies only to those liabilities for which the provision was enacted. *Focht v. Commissioner*, 68 T.C. 223 (1977). Although section 337 provides that gains received during liquidations described therein are not to be recognized, we held that such provision does not prevent the recognition of gain when the tax benefit rule is applicable. *Estate of Munter v. Commissioner*, 63 T.C. 663 (1975). Similarly, we held that when a corporation makes a distribution in liquidation, the distribution gives rise to income when the tax benefit rule is applicable, notwithstanding the provision of section 336 that gain is not to be recognized as a result of a distribution in liquidation. *Tennessee Carolina Transportation, Inc. v. Commissioner*, 65 T.C. 440 (1975), on appeal (6th Cir., Aug. 4, 1976).

In construing a statute, our ultimate objective must be to

ascertain and carry out the legislative purpose, and in so doing, we must weigh carefully the words of the statute for they represent the highest order of expression of the legislative purpose. However, the point to be emphasized in this case is that we cannot be slaves to the words of the statute and rely upon them to the exclusion of other circumstances manifesting the legislative purpose. In addition to reading the statute carefully, we must consider whether the proposed application reaches results consonant with the purpose of the law, or whether the results are "absurd," which we may presume was not intended by the Congress. When a reading and application of the statute creates doubt as to the intended purpose, the statements by the concerned committees must also be examined to see if they illuminate the legislative purpose. A proper performance of the judicial responsibility requires a careful analysis and weighing of all of these circumstances to reach a reasoned conclusion as to the legislative purpose.

In the case before us, there is no real difficulty in judging the legislative purpose. It is popularly believed that section 2055(b)(2) was enacted to allow the Swope family a charitable deduction for a bequest not artfully arranged, but in that situation, there was no claim of a marital deduction.[1] Irrespective of whether that story is well founded, a literal application of the statute to the facts of this case should cause the Court to recognize that there is an ambiguity in the statute. To allow a charitable deduction for a transfer of property which also gives rise to a marital deduction should cause anyone to wonder whether Congress really intended such results. Cf. *Estate of Schildkraut v. Commissioner*, 368 F.2d 40, 49 (2d Cir. 1966), affg. in part and revg. in part a Memorandum Opinion of this Court, cert. denied 386 U.S. 959 (1967). The committee reports provide a clear and unequivocal answer:

The purpose of this bill is to allow a deduction for estate-tax purposes in the case of certain bequests in trust *with respect to which no deduction is presently allowable.* * * * [H. Rept. 2885, 84th Cong., 2d Sess. (1956), 1956–2 C.B. 1358, 1359; emphasis supplied.]

See also S. Rept. 2798, 84th Cong., 2d Sess. (1956), 1956–2 C.B. 1360. The Court should recognize, as did the Court in old

---

[1] P. Stern, The Great Treasury Raid, p. 49 (1964).

Bolognia, that the purpose of the legislation calls for it not to be applied in this case.

Even if this is the last case to arise under this statute, I cannot bring myself to agree with a wrong decision just for that reason. In *Don E. Williams Co. v. Commissioner*, 62 T.C. 166 (1974), we were faced with the question of whether an employer's transfer of its note to a trust constituted payment for purposes of section 404(a). At the time of our decision, Congress was considering the legislation which indicated that such a note should not be given for such purposes. S. Rept. 93–383 (1973), 1974–3 C.B. (Supp.) 80, 177. We held that a note did not constitute payment for such purposes and pointed out that our decision was consistent with the proposed legislation. Our decision was appealed to the Seventh Circuit. By the time of that appeal, the proposed legislation had been enacted; despite that fact and despite the fact that three other circuits had reached a different conclusion, the Seventh Circuit considered the issue on the merits and sustained our decision, thereby creating a conflict among the circuits. 527 F.2d 649 (1975). Because of such conflict, the Supreme Court granted certiorari and also sustained our decision, even though by that time, the issue had been settled for future years by the enactment of legislation. 429 U.S. 569 (1977). Moreover, it is obvious that more taxpayers have qualified under section 2055(b)(2) than the draftsmen contemplated, and who is to say that no one else will qualify before the repeal takes effect.

TANNENWALD and WILBUR, *JJ.*, agree with this dissenting opinion.