ESTATE OF EDMUND S. HOSKINS, DECEASED, MERCANTILE-SAFE DEPOSIT & TRUST COMPANY, EXECUTOR, PETITIONER V. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9772–77.    Filed December 14, 1978.

*Jacques T. Schlenger, Harry D. Shapiro,* and *Bryson L. Cook,* for the petitioner.

*Dale Eggleston,* for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $22,470.82 in the Federal estate tax of the Estate of Edmund S. Hoskins.

The only issue remaining for decision is whether a charitable deduction for a remainder interest to be appointed to charity is allowable under section 2055(b)(2),[1] notwithstanding the fact that the transfer to the charity fails to meet the provisions of section 2055(e)(2)(A) which requires a split interest charitable remainder trust to be in the form of an annuity trust, a unitrust, or a pooled income trust.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect on the date of death of Edmund S. Hoskins, unless otherwise indicated.

All of the facts are stipulated and so found. The pertinent facts are set forth below.

The petitioner is the Estate of Edmund S. Hoskins. The personal representative is the Mercantile-Safe Deposit & Trust Co., which had its principal office in Baltimore, Md., when the petition was filed in this case. The United States Estate Tax Return for the estate was filed with the Internal Revenue Service Center, Philadelphia, Pa.

Edmund S. Hoskins (hereinafter referred to as Hoskins) died on November 6, 1973, and was survived by his widow, Nellie J. Hoskins (hereinafter referred to as Nellie). Nellie was born on October 1, 1888, and was 85 years of age at the time of her husband's death.

Hoskins' will was executed on November 7, 1972. Paragraph Third thereof devised and bequeathed to Nellie a fractional share of Hoskins' residuary estate, referred to as the "marital trust."

Under paragraph A of item Third of Hoskins' will, Nellie was entitled to receive the net income from the marital trust for life, to be paid to her in monthly installments. In the event the marital trust did not yield $800 of net income per month, the trustees were directed to pay out of the principal of the marital trust such additional sum as when added to the net income from the marital trust would provide Nellie with $800 per month.

Under paragraph B of item Third of Hoskins' will, the trustees were permitted to pay over or apply for Nellie's benefit so much of the marital trust as they deemed "advisable and proper from time to time for the maintenance, comfort, health, welfare and support of * * * [Nellie], including twenty-four (24) -hour private nursing care at a hospital or at home if such care is needed or desired by [Nellie]."

Paragraph C of item Third of Hoskins' will provided that upon Nellie's death, the trustees were to pay over the remaining principal of the marital trust to such persons, corporations, charities, or legal entities as Nellie should designate and appoint in her last will and testament.

On May 3, 1974, Nellie, by sworn affidavit, expressed her intention to appoint two-thirds of the marital trust to the Convention of the Protestant Episcopal Church of the Diocese of Maryland (hereinafter referred to as the convention), an organization described in section 2055(a)(2) of the Internal

Revenue Code of 1954, indicating therein that she had provided for the exercise of the general testamentary power of appointment over the marital trust granted to her by Hoskins' will in favor of the convention under item Fourth of her last will and testament dated November 7, 1972, and by item First of the first codicil thereto dated May 3, 1974.

Nellie J. Hoskins died on April 3, 1978, and there was no invasion of the principal of the marital trust. A certified copy of Nellie's will was admitted to probate on April 10, 1978. Item First of the first codicil thereto appoints two-thirds of the marital trust to the convention.

On Schedule N of Form 706 filed by the petitioner, Hoskins' estate claimed a charitable deduction in the amount of $77,970.10, which amount was intended to represent the value of a two-thirds remainder interest in the marital trust (discounted for the value of Nellie's life estate).

On Schedule M of Form 706 filed by the petitioner, Hoskins' estate claimed a marital deduction in the amount of $150,795.07, which amount represents the value of the marital trust.

The present value at the time of Hoskins' death (discounted for the value of Nellie's life estate) of the two-thirds of the remainder interest in the marital trust which Nellie appointed to the convention was $76,221.43.

The two-thirds of the remainder interest in the marital trust which Nellie appointed to the convention does not constitute a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)).

This case concerns the application of certain subsections of section 2055 as they existed after the Tax Reform Act of 1969 and prior to the passage of the Tax Reform Act of 1976.

Petitioner contends that section 2055(b)(2) applies to the charitable deduction claimed by it on the Federal estate tax return of the decedent. It is asserted that a decision in its favor is mandated by the prior opinions in *Estate of Miller v. Commissioner*, 400 F.2d 407 (3d Cir. 1968), affg. *Estate of Edna Allen Miller v. Commissioner*, 48 T.C. 251 (1967), and revg. *Estate of Hugh Gordon Miller v. Commissioner*, 48 T.C. 265 (1967), and *Estate of Pfeifer v. Commissioner*, 69 T.C. 294 (1977). Petitioner argues that section 2055(b)(2) is preemptive or exclusive in the sense that it should be viewed as a separate or

independent allowance provision comparable, rather than subordinate, to section 2055(a). To the contrary, respondent contends that the claimed charitable deduction is not allowable because the remainder interest to the charity fails to meet the requirements of section 2055(e)(2)(A). Respondent concedes in his reply brief that all of the requirements of section 2055(b)(2) have been met here, and but for the application of section 2055(e)(2) the result in this case would be controlled by the opinions in the *Miller* and *Pfeifer* cases. Thus, the narrow question confronting us involves the applicability of section 2055(e)(2), as amended by the Tax Reform Act of 1969, Pub. L. 91–172.

Section 2055(a) provides the general rule that the amount of qualifying charitable bequests, legacies, devises, or transfers is to be deducted from the value of the gross estate for purposes of determining the value of the taxable estate. Section 2055(b)(2),[2] which was repealed by section 1902(a)(4) of the Tax Reform Act of 1976, effective with respect to estates of decedents dying after October 4, 1976, provided that certain bequests in trust would qualify as charitable bequests, with the result that the value of the bequest reduced by the value of the life estate would be deducted from the value of the gross estate.

The effect of section 2055(b)(2) is to treat the described arrangement as a "transfer" from the decedent to charity for

---

[2]Sec. 2055(b)(2) provides:

(2) SPECIAL RULE FOR CERTAIN BEQUESTS SUBJECT TO POWER OF APPOINTMENT.—For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if—

(A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse;

(B) such surviving spouse was over 80 years of age at the date of the decedent's death;

(C) such surviving spouse by affidavit executed within 6 months after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive; and

(D) the power of appointment is exercised in favor of such organization and in the amounts or proportions specified in the affidavit required under subparagraph (C).

The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with.

the purposes of section 2055(a). Section 2055(b)(2) contains no allowance language but merely provides special rule definitions that are to be incorporated into section 2055(a), which is the basic allowance subsection. Section 2055(b)(2) provides that if certain conditions are present and coincide, then the presence and coincidence of these elements shall "be deemed a transfer to * * * [charity] by the decedent." Section 2055(b)(2) does not disclose the consequences of a transfer to charity by a decedent. It is necessary to return to section 2055(a) in order to ascertain that the amount of a transfer to charity shall be deducted from the value of the gross estate in determining the value of the taxable estate.

Respondent argues that the charitable deduction which would be allowable under section 2055(a) for the transfer of a remainder interest to charity, deemed to exist by reason of section 2055(b)(2), cannot be deducted by Hoskins' estate because the remainder interest does not comply with the provisions of section 2055(e)(2)(A).[3] Petitioner counters with the argument that, if Congress had intended to limit or modify section 2055(b)(2) when it enacted section 2055(e)(2)(A), Congress would have clearly indicated its intention by using a phrase such as "including subsection (b)(2)" in section 2055(e)(2) or by making some reference to section 2055(b)(2) in section 2055(e)(2) or by some other means. Its failure to include any such cross reference, petitioner argues, is a clear indication that Congress had no intention of limiting or modifying its "special rule for octogenarians" when it enacted section 2055(e)(2)(A). It is asserted that under the doctrine of ejusdem generis[4] a statute should be read to give the fullest possible meaning to each of its

---

[3]Sec. 2055(e)(2)(A) provides:

(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—

(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or

[4]In *United States v. Chase*, 135 U.S. 255, 260 (1890), the Supreme Court stated:

"It is an old and familiar rule that, 'where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the

terms. Applying this principle of statutory construction, petitioner urges that the "general rule" of section 2055(e)(2)(A) should be interpreted to control only those situations which are covered by the general language and, as such, do not come within the provisions of the "special rule" of section 2055(b)(2). Thus, it is petitioner's contention that if a transfer to charity qualifies under section 2055(b)(2), it is independent of section 2055(e)(2)(A) and its value is therefore deductible.

Petitioner further argues in its reply brief that:

Section 2055(b)(2) involves two separate and distinct transfers by two separate and distinct decedents. The initial transfer under section 2055(b)(2) is a bequest in trust with a power of appointment in the surviving spouse. If the power of appointment is a general power of appointment, under section 2041(a), the full value of the trust property is included in the estate of the surviving spouse. Accordingly, the initial transfer under section 2055(b)(2) is of the decedent's total interest (as opposed to merely a remainder interest) in the trust property to the surviving spouse.

The second transfer under section 2055(b)(2) is the appointment by the surviving spouse's Will of the trust property to a qualified charitable organization. Under section 2055(b)(1), this appointment entitles the surviving spouse to a charitable deduction equal to the full value of the trust property. Thus, the second transfer under section 2055(b)(2) is of the surviving spouse's total interest (as opposed to merely a remainder interest) in the trust property to a charity.

We agree with respondent on the disputed issue. Although the Tax Reform Act of 1969 did not repeal section 2055(b)(2), we think the amendment to section 2055(e)[5] severely limited the applicability of section 2055(b)(2). A charitable deduction is only deductible under subsection (a) of section 2055. All other subsections of section 2055 are qualifications to subsection (a). Subsection (b)(2) of section 2055, when applicable, treats a life estate plus a general power of appointment as being a bequest by the decedent of a charitable remainder interest. Subsection (e)(2)(A) precludes a section 2055 deduction for a charitable remainder interest unless it is an annuity trust, a unitrust, or a pooled income fund. A charitable remainder annuity trust is a trust from which a sum certain is to be paid at least annually to

---

former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' * * * "

[5]The effect of sec. 2055(e)(2) on sec. 2055(b)(2) was not considered in our opinion in *Estate of Pfeifer v. Commissioner*, 69 T.C. 294 (1977), because Louis Pfeifer executed his will on Mar. 31, 1967, and died on May 21, 1969, prior to the amendment in the Tax Reform Act of 1969.

one or more persons, at least one of which is not a charitable organization. A unitrust is a trust from which a fixed percentage of the net fair market value of its assets is to be paid at least annually to one or more persons, at least one of which is not a charitable organization. A pooled income fund is a trust to which each donor transfers property, contributing an irrevocable remainder interest in such property to or for the use of a charitable organization. Thus, we view the amendment to section 2055(e) in the Tax Reform Act of 1969 as an overriding disallowance provision applicable to all decedents except as specifically noted. The act became generally effective for decedents dying after December 31, 1969. However, the act established that the new rules were not to apply in the case of property passing under a will in existence on October 9, 1969, if the will was not modified by the individual prior to October 9, 1972, and could not be modified thereafter by the decedent because he was under a mental disability on that date and at all times thereafter. Pub. L. 91–172, sec. 201 (g)(4), 1969–3 C.B. 54. Hoskins does not fall within the group of described decedents with which section 2055(b)(2) remained applicable after the passage of the Tax Reform Act of 1969. He executed his will on November 7, 1972, and he died on November 6, 1973.

The marital trust under Hoskins' will does not constitute an annuity trust since the annual payment is not a sum certain (sec. 1.664–2(a)(1), Income Tax Regs.), and there is a power to invade (sec. 1.664–2(a)(4), Income Tax Regs.). Either of these factors prevents the trust from being an annuity trust. The marital trust does not constitute a unitrust since there is no fixed percentage to be paid annually to the widow (sec. 1.664–3(a)(1), Income Tax Regs.) and there is a power to invade (sec. 1.664–3(a)(4), Income Tax Regs.). Either of these factors prevents it from being a unitrust. And the marital trust does not constitute a pooled income fund since the remainder interest is not irrevocable (sec. 1.642(c)–5(b)(1), Income Tax Regs.), and there is no commingling with other donors (sec. 1.642(c)–(5)(b)(3), Income Tax Regs.). Either of these factors prevents it from being a pooled income fund.

In our opinion, amendments to the statutory provisions directly or indirectly affecting charities require a qualification of the broad liberal construction rule. An example is the statutory changes made in section 2055(e) by the Tax Reform

Act of 1969 which were intended to narrow the scope of permissible charitable transfer deductions in certain instances. We do not favor, through our interpretation, giving such restrictive provisions the aid of a rule of liberal construction applicable to the original charitable deduction statutory provisions, especially when such a construction permits a double deduction. See J. Mertens, Law of Federal Gift and Estate Taxation, Vol. III Cum. Supp., secs. 28.04, 28.29F, and 28.29G (1972).

The structure of section 2055 shows that section 2055(a) predominates and that no other subsection of section 2055 should be viewed as an independent allowance provision. In addition to the inherent restrictions within section 2055(a) concerning the basic, required characteristics of the *transfer* (or bequest, or legacy, or devise), section 2055(c), (d), and (e) disallow a deduction for all or part of the amount of the transfer to charity. Section 2055(c) disallows a deduction for that portion of the transferred property which is chargeable with the payment of any estate, succession, legacy, or inheritance taxes; section 2055(d) disallows a deduction for the value of transferred property which is not included in the gross estate; section 2055(e)(2)(A) disallows a deduction for the value of a remainder interest transferred to charity unless such interest is in the form of an annuity trust, a unitrust, or a pooled income fund. Section 2055(b)(2) provides certain definitional rules as to when the exercise of a power of appointment by a surviving spouse will be deemed a transfer to charity by the decedent. The subsections of section 2055 are so vital to the purpose of the entire section and constitute such an integral part of its application as to place beyond reasonable doubt that even subsection 2055(a), which grants the charitable deduction in the first instance, cannot itself stand alone.

The only allowance language contained in section 2055(b)(2) is in the last sentence of the subsection where it is stated that the affidavit referred to in the subsection "shall constitute a sufficient basis for the allowance of the deduction under this paragraph." We view this phrase as being intended to do no more than provide that the affidavit of the surviving spouse shall, for purposes of section 2055(a), be treated as being irrevocable, even though such an affidavit is not irrevocable or binding under local law. The mere fact that the affidavit is

deemed to be an instrument of "transfer" from the decedent is not a sufficient basis for allowance of a deduction under section 2055(a) because the affidavit is revocable at the pleasure of the affiant. The last sentence of section 2055(b)(2) cures the revocability defect that is inherent in the nature of the affidavit. Otherwise, the sentence does not affect or nullify any of the basic restrictions or requirements of the other subsections of section 2055. In our judgment, the plain language of the statute demonstrates that subsection (b)(2) of section 2055 was not meant to operate exclusive of subsections (a), (c), (d), or (e).

Respondent admits that all of the requirements of section 2055(b)(2) have been met here. Since that section treats the marital trust and affidavit as a transfer by Hoskins of a life interest to his surviving spouse, Nellie, with remainder to charity, the arrangement fails to satisfy the provision of section 2055(e)(2)(A) which requires a split interest charitable remainder trust to be in the form of an annuity trust, a unitrust, or a pooled income fund. Thus, notwithstanding the fact that all of the requirements of section 2055(b)(2)[6] have been met, disallowance of the claimed deduction is required by section 2055(e)(2)(A).

The Committee Reports accompanying the enactment of section 2055(e)(2)(A) reveal that the prohibition of a charitable deduction for a split interest charitable remainder in trust, unless a unitrust, annuity trust, or a pooled income fund, was enacted to prevent estates from obtaining a charitable contribution deduction for a transfer of a remainder interest in trust to a charity which deduction would be substantially in excess of the amount the charity might ultimately receive. H. Rept. 91-413 (Part 1), 91st Cong., 1st Sess. (1969), 1969-3 C.B. 200, 237; S. Rept. 91-552, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 423, 479; Conf. Rept. 91-782, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 644, 655. Although the Committee Reports do not specifically mention section 2055(b)(2), we think the language therein implies that section 2055(e)(2)(A) applies to all split interest charitable remainders in trust.

---

[6] We are not persuaded by petitioner's arguments that (1) sec. 2055(b)(2) was amended by sec. 101(c) of the Excise, Estate and Gift Tax Adjustment Act of 1970, which shortened the period for filing the affidavit; (2) the fact that the explanation in H. Rept. 94-658, 1976-3 C.B. (Vol. 2) 1090-1091, relating to the repeal of sec. 2055(b)(2) by sec. 1912(a) of the Tax Reform Act of 1976, did not contain any reference to sec. 2055(e)(2)(A); or (3) the fact that sec. 20.2055-1(b)(2), Estate Tax Regs., originally published on June 23, 1958, remained unchanged until the enactment of the Tax Reform Act of 1976, without any cross reference to sec. 2055(e)(2)(A). See sec. 7806(a) as to the legal effect of cross references.

Petitioner relies heavily on the *Estate of Edna Allen Miller v. Commissioner*, 48 T.C. 251 (1967), affd. 400 F.2d 407 (3d Cir. 1968). This Court, in its opinion discussing section 2055(b)(2), stated at page 260:

it may be (and there is nothing in the legislative history to the contrary) that Congress did not specifically consider whether the statute would apply. Be that as it may, this situation is unmistakably covered by the plain and unambiguous language used by Congress in the enactment of section 2055(b)(2), and as the Supreme Court said in *Barr v. United States*, 324 U.S. 83, 90, "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." Granting, *arguendo*, that the congressional report is ambiguous by reason of what it contains and what it does not contain, we are not aware of any authority which would give us the power to rewrite by judicial fiat an unambiguous statute in order to clear up ambiguities in its legislative history. [Fn. ref. omitted.]

This same reasoning applies in the instant case. Section 2055(b)(2) unambiguously states, in situations like this, that:

such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent * * *

Section 2055(e)(2)(A) explicitly and unambiguously states that:

Where an interest in property * * * passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest * * * in the same property passes or has passed * * * from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust * * * or a pooled income fund * * *

Accordingly, we conclude that the deduction that would be allowable to the petitioner under section 2055(a) for the transfer of a remainder interest does not meet the requirement of section 2055(e)(2)(A). Section 2055(b)(2) must be viewed as an interdependent part of section 2055. It is not a separate allowance section. The grant of any deduction comes not from section 2055(b)(2) but from section 2055(a). Therefore, the deduction is subject to all of the restrictions inherent in and applicable to section 2055(a), which includes section 2055(e)(2)(A). We hold

that the petitioner is not entitled to the claimed charitable deduction.

*Decision will be entered for the respondent.*