*Decisions will be entered under Rule 50.*

ESTATE OF WILLIAM M. LANDE, DECEASED, MARK BRINTHAUPT, HARRY MOSESON AND HERMAN LANDE, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33532. Promulgated March 22, 1954.

*Henry Moseson, Esq.*, for the petitioner.
*Francis J. Butler, Esq.*, for the respondent.

**OPINION.**

BRUCE, *Judge:* The ultimate issue to be determined in this proceeding is whether respondent erred in disallowing in part claimed deductions on account of funeral and administration expenses and debts, and certain charitable deductions.

The decedent, William Lande, was a trustee, and after the death of his mother, beneficiary of the income of a trust fund established by his mother, with the power, by will, to dispose of the principal of such fund remaining at the time of his death after payment of certain specified items. That he exercised the power of appointment in his will is not disputed. However, since his separate estate, exclusive of the trust property, was not sufficient to pay all of his funeral and administration expenses and debts or any part of the charitable bequests made by him in his will, there is disagreement as to whether the appointive property was applicable to these items. Respondent takes the position that the assets subject to the power of appointment were not a part of decedent's estate subject to claims and accordingly, as there were not sufficient assets in decedent's separate estate to make payments thereof, deductions for certain expenses and charitable bequests were properly disallowed. Petitioners' position is that, decedent having exercised the power of appointment as

to all the property embraced in the trust fund, the debts, expenses, and bequests were payable out of the appointive property and the claimed deductions therefore should be allowed. Petitioners appear to rely principally upon the decree of the Supreme Court for Chemung County, New York, settling the account of the surviving trustee, stating that "the principal passed under the trust agreement to William M. Lande, deceased," and directing the surviving trustee of the trust to turn the corpus of the trust over to the executors of decedent's estate "to be administered by them as part of the estate of said William M. Lande, deceased," and upon the decree of the surrogate court settling the intermediate account of the executors and fixing their commissions, as correctly reflecting the law of New York and binding upon the Commissioner.

It appears from the recitals in the decrees that they were both consent decrees and there is nothing contained therein, or otherwise shown, to indicate that the facts upon which deductibility herein depends were called to the attention of, or passed upon by, the courts which rendered said decrees. Moreover, as hereinafter shown, they do not correctly reflect the law of the State. Accordingly, in determining the deductibility of the items claimed herein for Federal estate tax purposes, this Court is not bound by the decrees mentioned. See Regs. 105, sec. 81.30. Cf. *Estate of William A. Carey*, 9 T. C. 1047; *T. F. Cross, Executor*, 5 B. T. A. 621; *Tatem Wofford*, 5 T. C. 1152, 1161–2.

The parties have made little distinction in their arguments on briefs with respect to the deductions claimed on account of funeral and administration expenses and debts and those claimed on account of charitable bequests. We think they require separate treatment. The one involves the application of section 812 (b) of the Internal Revenue Code; the other the application of section 812 (d).

Respondent explained his adjustments with respect to funeral and administration expenses and debts of decedent as follows:

The above items have been disallowed, in the amount that they exceed the value of property subject to claims [$12,082.43] in accordance with Sec. 812 (5) [*sic*] of the Internal Revenue Code. It is held that the corpus of the Bertha Lande Trust, in connection with which the decedent validly exercised a power of appointment in his last Will and Testament, does not constitute property subject to claims against his estate. It is further held that the deductions claimed for executors' commissions and attorney's fees were excessive under local laws and the Internal Revenue Code to, at least, the extent of $4,457.08.

With respect to funeral and administration expenses and debts of decedent, the question is thus presented: Whether the assets in the trust corpus of the Bertha Lande trust, over which decedent had and exercised a general testamentary power of appointment, may be treated as "property subject to claims" in determining the allowable

deductions under section 812 (b) of the Internal Revenue Code,[2] and if so, whether deductions claimed for executors' commissions and attorney's fees were excessive under local laws and the Internal Revenue Code to, at least, the extent of $4,457.08.

The debts of decedent at the time of his death totaled $8,868.70, his funeral and administration expenses, $7,670.81. The grand total of these items was $16,539.51. Assets in decedent's own name at his death, including stocks and bonds, mortgages, notes, cash, jointly owned property, totaled, after adjustments in the notice of deficiency which are not in issue here, $12,032.43. In addition thereto, there was includible in decedent's gross estate for Federal estate tax purposes the trust corpus, subject to a general testamentary power of appointment, of the value of $101,743.39, after uncontested adjustments to reflect the optional valuation of the various items contained therein less termination expenses and charitable contributions set forth in

---

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—
 (1) for funeral expenses,
 (2) for administration expenses,
 (3) for claims against the estate, and
 (4) For unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth ; except that in any case in which any such claim is founded upon a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in subsection (d) for the purposes specified therein, the deduction for such claim shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under subsection (d) if such promise or agreement constituted a bequest. There shall be disallowed the amount by which the deductions specified in paragraphs (1), (2), (3), and (4) exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this section the term "property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate ; and, for the purposes of this definition, the value of the property shall be reduced by the amount of the deduction under the next sentence attributable to such property. There shall also be deducted losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise, and if at the time of the filing of the return such losses have not been claimed as a deduction for income tax purposes in an income tax return.

For the purposes of this chapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

the trust indenture. Sec. 811 (f), I. R. C.[3] Of the total deductions of $16,539.51 claimed by the executors of decedent's estate, respondent allowed only $12,032.43, representing the value of the assets includible in the decedent's estate held in his own name, and disallowed the remaining deductions in the amount of $4,457.08.

Petitioners concede, on brief, that without the appointive property the estate of William M. Lande was insolvent.

Under section 812 (b), funeral and administration expenses and debts are deductible for estate tax purposes in such amounts "as are allowed by the laws of the jurisdiction" under which the estate is being administered. In allowing deductions to the extent of $12,032.43, respondent has recognized the deductibility of some part of such items herein. Section 812 (b) further provides, however:

There shall be disallowed the amount by which the deductions specified in paragraphs (1), (2), (3), and (4) exceed the value at the time of the decedent's death, of property subject to claims. * * * For the purposes of this section the term "property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would *under the applicable law*, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate; * * * [Emphasis supplied.] [4]

The trust corpus subject to decedent's general power of appointment, which he exercised, was clearly "includible in the gross estate of the decedent" for Federal tax purposes. Sec. 811 (f), I. R. C. Under New York probate law, however, such assets, subject to a power as defined in the local statute, do not constitute assets of the decedent's estate for local probate purposes. *In re Beaumont's Estate*, 263 N. Y. S. 426 (1933); *In re Terwilligar's Estate*, 254 N. Y. S. 498 (1931); *Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290, 114 N. E. 389 (1916); *Cutting* v. *Cutting*, 86 N. Y. 522 (1881). In *In re Terwilligar's Estate, supra*, the court expressed the following principle and relevant information concerning the New York statutory system of powers:

---

[3] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(f) POWERS OF APPOINTMENT.—

(1) PROPERTY WITH RESPECT TO WHICH DECEDENT EXERCISES A GENERAL POWER OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof.

[4] For a discussion of the background of this section, enacted as section 405 (a), of the Revenue Act of 1942 amending section 812 (b) to read in its present form, see *Estate of Samuel Hirsch*, 14 T. C. 509, and statement of the Committee on Ways and Means on section 405, in H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C. B. 372, 492, quoted in part in the *Hirsch* case.

A power of appointment given under a will is included in the general regulation of powers in article 5 of the Real Property Law (section 130 et seq.). Cutting v. Cutting, 86 N. Y. 522. In section 131 of this law, a "power" is defined as: "An authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform."

As is the case with many other provisions of this law, it is applicable equally to personalty and to realty. * * *

Since such a power is merely an authority, the extent and manner of execution of which is determinable solely on the principles of agency, * * * it follows in the ordinary case that the donee of a power, like an agent, possesses no right to or interest in the property to which his agency applies. * * * He has merely a mandate, * * * title at all times remaining in the primary estate until the power is exercised according to its terms, when it passes directly from the underlying estate to the appointee. Farmers' Loan & Trust Co. v. Mortimer, supra.

In *Farmers' Loan & Trust Co.* v. *Mortimer, supra,* the beneficiary of a trust of the income for life with a general power of appointment executed a *contract to appoint* to a company as security for a loan. On his death the court refused specific performance of the contract, since the power could be executed only by will. The beneficiary had no power to pledge this property during life. The court, in an opinion by Cardozo, J., stated:

But in this case the subject-matter of the power is not the property of the promisor. It is the property of his mother. The promisor was not the owner of any legal estate. He was the beneficiary of a trust. In such circumstances a power of appointment does not involve that absolute power of disposition which is equivalent to a fee. Those who take under this power have received nothing that was the property of John Mortimer. They hold nothing of his to be charged by equity with a trust. * * *

Similarly, in *Cutting* v. *Cutting, supra,* decedent had an equitable life interest in a trust corpus as beneficiary of a trust created by his mother and, as well, a general beneficial power of disposition over such corpus exercisable by will. The court held that such corpus was not subject to claims of creditors of the decedent. It reasoned that since the donee, because of the trust, could not have disposed of the entire fee for his own benefit within his lifetime, the case was not within the statute. Thus it was stated:

The revisers [in the report on the Revised Statutes of 1830] say, that in reason and sense there is no distinction between the absolute power of disposition and the absolute ownership (5 Edm. Stat. at Large, 327) ; and that it is an affront to common sense, to say that a man has no property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure. (Id. 328). Let us notice here, however, that the terms used by the revisers do not include a power to appoint by will, they speak of a power to a man "to *sell when he chooses, and to dispose of the proceeds at his pleasure.*" And so when they came to draft the law to carry out their purpose, they use the phrase "absolute power of disposition," but confine it to a power by which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit. (§ 85.) Having set forth

their general purpose to be that which we have above stated, the revisers become more particular, and say that a reform in the law is desirable so as to secure an observance of the formalities required in the execution of wills and deeds, the protection meant for creditors and purchasers, and the checks by which secrecy and fraud in alienation of lands are to be prevented. (Id. 326.) It is with the second of these objects that we have now to do. The revisers sought to protect creditors by declaring that an absolute power of disposition should be deemed equivalent to actual ownership (Id. 328) ; and by an absolute power of disposition, they meant a power of disposition in the life-time of the donee, or in their own words, a power by which he "may sell when he chooses, and dispose of the proceeds at his pleasure." (Id.) It will be noticed, by him who reads closely the reported cases on this topic, that at the time when the revisers drafted the article "of powers", it had seldom been held that the execution of a general power to dispose by will alone (that is, not in the lifetime of the donee), or to dispose of property entirely that of another than the donee, subjected the estate to the debts of the creditors of the donee. * * *

See also *Hirsch* v. *Bucki*, 162 App. Div. 659, 148 N. Y. S. 214.

In order therefore for the creditors of a donee of a power of appointment to be able to subject the appointive property to their claims, the rule in New York is that the donee must have an "absolute power of disposition" equivalent to a fee. Secs. 149–153, N. Y. Real Property Law.[5] *Cutting* v. *Cutting, supra; Matter of Briggs*, 101 Misc. 191, 167 N. Y. S. 632 (1917) ; *Manion* v. *Peoples Bank of Johnstown*, 38 N. Y. S. 2d 484 (1942), affd. 266 App. Div. 1043, 44 N. Y. S. 2d 593, reversed on other grounds 292 N. Y. 317, 55 N. E. 2d 46. Since decedent, acting alone, could appoint by will to any grantee, including his own estate, he was possessed of a general beneficial power of disposition exercisable by will within the statutory terms, secs. 134, 136, N. Y. Real Property Law, but, during his lifetime, he was not "enabled * * * to dispose of the entire fee for his own benefit." He could not do so as life beneficiary or as a cotrustee of the Bertha Lande trust, and while he was given a limited power to invade the corpus, it could not be exercised without the consent of his cotrustee, his brother Herman Lande. Cf *Terry* v. *Wiggins*, 47 N. Y. 512 (1872) ; see also *Stafford* v. *Washburn*, 145 App. Div. 784, 130 N. Y. S. 571 (1911), reversed on other grounds 208 N. Y. 536, 101 N. E. 1122. He did not have, therefore, an "absolute power of disposition" equivalent to a fee. *In re Welsh's Will*, 173 Misc. 22, 18 N. Y. S. 2d 157 (1940). Consequently his creditors could not subject the appointive property, i. e. the trust corpus, to their claims. *Cutting* v. *Cutting, supra.*

Under the law of New York, decedent's creditors, including the executors and attorneys, could not have compelled the executors herein to recover and bring into the decedent's estate the assets of the trust corpus subject to decedent's general testamentary power of appointment to satisfy their claims against the estate. For the reasons stated, it is our opinion that the trust corpus subject to decedent's general

---

[5] McKinney's Consolidated Laws of New York, Annotated, Book 49.

testamentary power of appointment did not constitute property includible in the decedent's gross estate which, or the avails of which, under the applicable local law, would bear the burden of the payment of such claims in the final adjustment and settlement of the decedent's estate within the meaning of section 812 (b), Internal Revenue Code. Accordingly the respondent did not err in limiting the deduction claimed for funeral and administration expenses and debts. *Estate of Herbert Jermain Slocum*, 21 T. C. 465. This conclusion makes it unnecessary for us to consider whether the deduction claimed for executors' commissions and attorney's fees were excessive under local laws and the Internal Revenue Code to, at least, the extent of $4,457.08.

With respect to the claimed deductions for charitable bequests in Schedule N of the return, respondent disallowed deduction of $8,500 representing the Artic League, Inc. ($1,000), Elmira Free Academy ($1,000 and $1,500), and Elmira College ($5,000) because "there are no assets available in the estate to make payment thereof." The $1,500 bequest to Elmira Free Academy to be held in trust and the income thereof to be used to provide for an annual dinner for the staff of "The Vindex" in memory of Isaac Lande and William Lande was disallowed by respondent on the further ground "that it does not come within the purview of section 812 (d) of the Internal Revenue Code." [6]

---

[6] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944) \* \* \* or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, \* \* \* or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation. Property includible in the decedent's gross estate under section 811 (f) received by a donee described in this subsection shall, for the purposes of this subsection, be considered a bequest of such decedent. If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate. For disallowance of certain charitable, etc., deductions otherwise allowable under this subsection, see sections 3813 and 162 (g) (2).

There is no dispute with respect to bequests to Arnot-Ogden Hospital and St. Joseph's Hospital of $5,000 each, which were also claimed in Schedule N, for, as respondent stated, they "are not bequests of the decedent but rather are provided for in the Bertha Lande Trust indenture and have been given consideration by allowance in the determination of the value of the trust corpus under 'Power of Appointment' herein."

Except for the $1,500 bequest to Elmira Free Academy, respondent has not challenged either the purposes of the gifts or the qualifications of the Artic League, Inc., Elmira College, or Elmira Free Academy as beneficiaries under section 812 (d), Internal Revenue Code. He has apparently challenged the *purposes* for which the gift of $1,500 to the Elmira Free Academy was made. There is no showing made by the petitioners that this particular bequest was "exclusively for religious, charitable, scientific, literary, or educational purposes * * *" or "for the prevention of cruelty to children or animals * * *." It appears to be for a memorial to Isaac Lande and the decedent. There is nothing in the will which restricts the use of the bequest to the purposes set forth in the statute. On the contrary the will provides that the trust income be used to provide for an annual dinner for the staff of "The Vindex" in memory of Isaac Lande and decedent. Such use is clearly not within the purposes of the statute. Under the circumstances, we conclude that the determination of the Commissioner with respect to this bequest is not in error. See *Levey* v. *Smith*, 103 F. 2d 643, certiorari denied 308 U. S. 578; *Estate of Josephine P. Taylor*, 40 B. T. A. 375.

Assuming that the other beneficiaries and the purposes of the bequests to them are within the terms of section 812 (d), the deductions claimed will be allowed if the bequests in question were made, in the manner specified, from property subject to the general testamentary power of appointment.

Section 812 (d) of the Internal Revenue Code was amended by section 403 (b) of the Revenue Act of 1942 so as to insert the following new sentence: "Property includible in the decedent's gross estate under section 811 (f) received by a donee described in this subsection shall, for the purposes of this subsection, be considered a bequest of such decedent." [7] In the committee reports accompanying this amendment it is stated:

---

[7] The evidence is not as explicit as might be desired that the bequests involved were in fact "received" by, or paid to, the charities named in the will. We think, however, it may fairly be inferred from the record. In the petition filed in the Surrogate's Court for settlement of the executor's accounts Herman Lande, brother, and Anna May Traitel, sister, of decedent were listed as the only persons interested in such proceedings other than "such as by vouchers filed with the account appear to be paid." Such vouchers were not made a part of the record herein. However, in the decree settling the account it appears that, after examining the account, the Surrogate found it to be as stated, that Herman Lande and Anna May Traitel were the only persons interested in the proceeding, and that

This section provides that property includible in the gross estate under section 811 (f) shall, for the purposes of the subsections relating to deductions for contributions to charity, be considered a bequest of the decedent. The rules governing the deduction of bequest to charity are thereby made applicable to property required to be included in the gross estate under section 811 (f) as amended, where such property is appointed to charity or is received or held by charity upon the release or nonexercise of the power. This amendment is clarifying with respect to property passing to charity under a general power of appointment exercised by the decedent and includible in the gross estate. * * * [H. Rept. No. 2333, 77th Cong., 2d Sess., p. 161; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 233.]

It thus appears to be the legislative purpose to apply the same principles applicable to charitable bequests by an absolute owner to those of a donee of a power of appointment. In other words, since the donee is to be treated as owner for the purpose of imposing tax, he will also be treated as owner for the purpose of determining charitable deductions. Cf. Paul, Federal Estate and Gift Taxation, 1946 Supplement, secs. 9.04, 9.37. Since, under the trust agreement, the brother and sister of the decedent take in default of exercise of the power of appointment, we are not here concerned with whether the charities can take "upon the release or nonexercise of the power." It is necessary, however, for us to determine whether, in his will, decedent *appointed* the sums in question to the charities *from the trust corpus.* In addition to the committee reports mentioned above, see also Regs. 105, sec. 81.44 as amended by T. D. 5239, 1943 C. B. 1101-2, wherein it is stated:

This rule applies only where the donee described in section 812 (d) is the appointee under the exercise of the decedent's power or the remainderman upon the release (or nonexercise) of the power by the decedent.

The bequests involved are those mentioned in the eighth, ninth, and tenth paragraphs of decedent's will and there are no specific directions that they be paid out of the trust fund. The power of appointment is mentioned only in the eleventh or residuary clause of the will providing that:

All the rest, residue and remainder of my estate wheresoever situated and including any property over which I shall have power of appointment, and more especially under the Trust Agreement made in June 1938 between my Mother Bertha Lande, as Grantor, and my brother Herman Lande and myself, as Trustees, I give and bequeath as follows: [One-half to his sister and one-half to his brother.]

Respondent contends that the entire corpus of the trust fund remaining at the time of decedent's death, after payment of certain specified items set forth in the trust agreement, passed to the brother and sister, and since there were not sufficient funds in decedent's estate

the executors had fully accounted for all moneys and property of the estate. Moreover, respondent has not questioned the statement in petitioners' brief that the payments of such bequests were set forth under Schedule C of the executors' account which was approved by the Surrogate.

out of which they could be paid, the charitable bequests should be disallowed. On the other hand, petitioners contend that decedent did not have sufficient funds of his own out of which the charitable bequests could be satisfied at the time the will was executed and that he intended the charitable bequests involved to be paid out the trust fund.

Over respondent's objection, petitioners' attorney was permitted to testify, as a witness for petitioners, as follows:

I prepared Mr. Lande's will in 1945, which was a few years after he had made a settlement with the Elmira Bank and Trust Company, of which I knew he was broke in 1945; and from 1945 he just had gotten a position with the Elmira Housing Authority, and he had this power of appointment under the will, and he consulted me about it, and he told me at that time that he had absolutely no assets except a few shares of radio stock, and about 1,000 or $1200 in cash.

And he asked me to be sure to provide these legacies of approximately $8500 to come out of the appointive property.

That is the conversation. I drew the will thinking I had covered it.

Such testimony was clearly admissible under section 354 of the New York Civil Practice Act, as amended by Laws of 1936, c. 493, *In re Casper's Will*, 161 Misc. 199, 291 N. Y. S. 585; *In re Morrison's Will*, 270 App. Div. 318, 60 N. Y. S. 2d 18; *In re Thompson's Will*, 189 Misc. 873, 68 N. Y. S. 2d 123, and is clearly admissible here. In support of their contention, petitioners have cited a number of decisions of the New York courts some of which, distinguishable on their facts, are not in point. We deem it sufficient to refer only to a few of those which we think are in point. In *In re Williams Trust Co.*, 82 N. Y. S. 2d 101 (1948), it is stated:

In approaching the problem presented certain guiding principles of estate law are to be kept in mind. The most basic and elementary is that the intent of the maker of the will is to be ascertained and given effect, if possible. Metcalfe v. Union Trust Co., 181 N. Y. 39, 45, 73 N. E. 498, 500. Such intent may be gleaned not only from the language of the will itself but from other factors such as the testatrix' financial means and the conditions confronting her when the will was drawn and which may be regarded, reasonably, as having affected her design. * * *

It is to be presumed that she drew her will in good faith and expected that the legacies bequeathed would be met in realization, not frustration. * * *

In *In re Glorney's Trust*, 109 N. Y. S. 2d 898 (1951), the decedent had only a small personal estate aside from large appointive property. The court said:

The law presumes that a person is cognizant of the approximate amount and extent of his or her property. * * *

The Courts have repeatedly held that in the face of an inadequate personal estate apart from a trust otherwise disposed of, the intent of the decedent to provide for specific legatees would be recognized by an invasion of the trust corpus to the extent required to satisfy such specific legacies.

In *In re Burchell's Trust*, 105 N. Y. S. 2d 431 (1951), the court held that where the testatrix, who had a power of appointment over assets of an inter vivos trust and whose personal estate amounted to approximately $5,000 and a house, devised the house and bequeathed gifts of approximately $50,000 to her husband, children, and grandchildren, assets of the inter vivos trust could be used in fulfilling the bequests, even though the will contained a residuary clause disposing of the trust assets, stating:

The disparity between her individual estate and her testamentary gifts was so great, both when her Will was executed and when she died, that she must have intended that her bequests should be met out of the assets of the inter vivos trust under her power of appointment.

There could hardly be question concerning this, except for the mention of this power of appointment in the residuary clause in the Will. The residuary clause contained in paragraph Twelfth disposes of "All the rest, residue and remainder of my estate, both real and personal of whatsoever kind and nature, and wheresoever situated, of which I may die seized or possessed or entitled at time of my decease, including all the property which I may have a power of disposition of, or which may or might pass under the terms of my Will, and the property which I have the power of disposing of under and by virtue of the trust deed or deed of appointment made or to be made by me under a certain deed of trust heretofore executed by me on or about June 22nd, 1891, and the confirmation thereof dated August 8th, 1899."

It could hardly have been the purpose of testatrix by this clause, as has been held at Special Term, to give all of the assets of her inter vivos trust to her residuary legatees, thus allowing her prior bequests to fail. A residuary clause, by its very nature, is ordinarily intended to dispose of what is left after making provision for prior gifts. * * *

The conclusion to be drawn is that the entire Will was deemed by testatrix to be an exercise of her power of appointment under the trust indenture, * * * The circumstance that she referred to this power of appointment in her residuary clause does not imply a contrary intention, nor amount to a direction that the trust assets shall be disposed of only under the residuary clause. * * *

See also *In re Lynn's Estate*, 26 N. Y. S. 2d 96 (1941).

Considering all the circumstances mentioned above, we hold that such charitable bequests were properly allowed and that the respondent erred in disallowing the deductions claimed therefor.

*Decision will be entered under Rule 50.*