ESTATE OF VERA S. SORENSON, LOLA L. BONNER, INDEPENDENT EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3970–77.    Filed September 25, 1979.

*William V. Phelan* and *Stephen F. Bright,* for the petitioner.
*Robert M. Fowler,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined a deficiency in the

Federal estate tax of the Estate of Vera S. Sorenson, deceased, Lola L. Bonner, executrix, in the amount of $41,534.40.

The issues for decision are: (1) Whether the Estate of Vera S. Sorenson is entitled to a deduction under section 2055(a)(2), I.R.C. 1954,[1] for the value of the remainder interest in a trust which passed to a charitable organization upon decedent's failure to exercise her general power of appointment over the trust corpus; and (2) if the estate is entitled to a charitable deduction, what is the proper method of computation of the amount of the deduction.

All of the facts have been stipulated and are found accordingly.

Lola L. Bonner, the executrix of the Estate of Vera S. Sorenson, resided in Rockport, Tex., at the time of the filing of the petition in this case. A timely estate tax return (Form 706) was filed on behalf of the Estate of Vera S. Sorenson with the Internal Revenue Service Center, Austin, Tex.

Vera S. Sorenson, decedent, died testate on February 22, 1974. At death, she was a Harris County, Tex., resident. She was the widow of Ira L. Sorenson, who had died testate on May 30, 1969. Mr. Sorenson was a resident of Rockport, Tex., at the time of his death.

To dispose of all assets in his residuary estate, Mr. Sorenson's last will and testament, dated January 24, 1969, created two separate trusts, entitled "Wife's Share" and "Charitable Share." Under the latter testamentary trust, a split-interest trust, a contingency remainder interest was left to the State University of Iowa Foundation, which was organized and operated exclusively for educational purposes within the meaning of section 2055(a)(2). The pertinent provision of Mr. Sorenson's will is set forth below:

## VI.

All the REST and RESIDUE of the property which I may own at the time of my death, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this Will, including all lapsed legacies and devises, I give, devise and bequeath unto The State University of Iowa Foundation, a corporation not for pecuniary profit, IN TRUST, nevertheless, for the uses and purposes hereinafter enumerated. The Trust Estate shall be held

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue.

in two (2) undivided shares, each of which shares is to be considered a SEPARATE TRUST, although the Trustee may, for purposes of administration, hold the Trust Assets as a single unit if it so desires; however, my said Trustee shall have the right and power to partition said shares, when, and if, in its judgment it is considered to be necessary, wise, expedient or economic.

A. One of such shares, which is hereby designated as WIFE'S SHARE, shall consist of an amount equal to the maximum marital deduction allowable in determining the federal estate tax payable by reason of my death, diminished by the value of all other property interests included in my gross estate for federal estate tax purposes and which pass or have passed from me to my said wife either under any other provision of this Will or in any other manner outside of this Will, in such manner as to qualify for said marital deduction under the Federal Internal Revenue Code. Only assets which qualify for the marital deduction shall be included in such share by my Trustee. The assets to be allocated to the WIFE'S SHARE shall have an aggregate fair market value representative of the appreciation or depreciation in value, if any, to the date or dates of allocation of all of the assets available for allocation from my estate.

1. During the lifetime of my beloved wife, VERA S. SORENSON, all the income derived from this trust shall be paid to my wife or applied for her benefit in convenient, but not less frequently than semi-annual, installments.

2. If the income distributable to my wife in accordance with the provisions of Paragraph 1 above, supplemented by income (other than capital gains) available from other sources to her, shall not be sufficient to enable her to maintain substantially the standard of living to which she was accustomed at the time of my death—as to which the judgment of my Trustee shall be conclusive—then, and in that event, I authorize my Trustee to pay to or apply for the benefit of my wife, so much of the corpus of this trust as my Trustee in its sole discretion shall from time to time deem requisite or desirable for such purpose even to the full extent of the entire corpus of this trust.

3. Upon the death of my said wife, the corpus remaining in this trust shall be distributed by the Trustee free of the trust, to or for the benefit of one or more persons or corporations, in such manner and in such proportions, whether outright, in trust or otherwise, as my said wife may by her Last Will and Testament direct and appoint, including the right in my wife to appoint said property to her estate. Such Power of Appointment shall be exercisable by my said wife exclusively and in all events but shall be exercisable only by specific reference to said power in her Last Will and Testament. To the extent that my wife fails to exercise effectively the power of appointment herein conferred upon her, then upon her death, the assets comprising this trust, or any part thereof not effectively appointed, shall become a part of CHARITABLE TRUST and be held and distributed as provided in Article VI-B hereof, in all respects as if it had originally been a part of same.

4. In the event that my wife, VERA S. SORENSON, shall predecease me, then, in that event, that part of the Trust Estate which is herein designated as WIFE'S SHARE, shall lapse, and immediately become a part of the Trust Estate designated as CHARITABLE SHARE.

b. The other share of the Trust Estate, to be designated as the CHARITA-

BLE SHARE, shall consist of all of the remaining Trust Assets. During the term of this Trust, my Trustee is directed as follows:

1. My Trustee shall pay to my two brothers, DR. A. C. SORENSON, who resides in Davenport, Iowa, and DR. OTTO J. SORENSON, who resides in Greenwich, Connecticut, the net income from TWO THOUSAND (2,000) shares of stock in STANDARD OIL COMPANY OF NEW JERSEY; such net income shall be paid in equal shares to my said brothers in convenient, but not less frequently than annual, installments.

2. In the event that either or both of my said brothers should predecease me, or in the event that either or both of my said brothers should die during the term of this trust, then, in any of said events, the gift of income which said deceased brother would have received hereunder shall lapse and shall be distributed in accordance with Article VI-C following.

3. The term "income" as used herein shall be construed to be cash dividends only, from such stock, and shall not include any additional shares which may accrue to the trust by virtue of corporate re-organization of "stock split" or "stock dividend" as the terms are commonly used.

C. 1. The balance of the net income from the CHARITABLE SHARE, my Trustee shall pay to or for the benefit of my said wife, VERA S. SORENSON, for so long as she shall live. In addition to the net income to which my wife shall be entitled she shall have the absolute power and right if she so desires, but she shall not be required to demand, obtain and withdraw from the principal of the CHARITABLE SHARE trust fund, in any or each calendar year during the existence of such trust, a sum or sums up to but not exceeding a total in any one calendar year of the following amount: 1) FIVE THOUSAND DOLLARS ($5,000.00), or 2) FIVE PER CENT (5%) of the aggregate value of the entire assets of such trust fund in the year of such withdrawal, calculated on the lowest total value attained by such assets (including the portion withdrawn) at any time during such calendar year, after deducting all liabilities of such trust fund. This shall be a non-cumulative right of withdrawal, and if it is not exercised or only partially exercised, in any one calendar year, the amount permitted to be but not withdrawn shall not be carried over to a later year. In the event that my said wife is survived by both or either of my forenamed brothers, the net income which she was entitled to receive during her lifetime under this paragraph of my Will shall be paid to her two children, or to the survivor of them if one of them is deceased, or if both of such children predecease both or either or [sic] my brothers, then accumulated in accordance with the provisions of Article VI, Paragraph C, 2 hereof during the period of time that both or either of my forenamed brothers shall survive my wife and her two children.

2. Following the death of my said wife and two brothers, the net income from the CHARITABLE SHARE trust fund shall be paid not less frequently than semi-annually to my wife's two children, SANDRA ECCLES EDWARDS and TERRANCE EUGENE ECCLES, for so long as they shall live, in equal shares during their joint lives, and upon the death of either of them, thereafter to the survivor of them for so long as the survivor of them shall live. In the event that both or either of my two forenamed brothers survive my wife and her two children, the net income otherwise payable hereunder to my wife or to her two children shall be accumulated and added to the principal of this trust

during the period of time that both or either of my forenamed brothers shall survive my wife and her two children.

3. Upon the death of the survivor of the class composed of my two forenamed brothers, my wife, and the two forenamed children of my wife, this trust shall terminate and the entire remaining assets thereof shall be paid over and distributed to THE STATE UNIVERSITY OF IOWA FOUNDATION, a corporation not for pecuniary profit, free and clear of this trust, to establish the IRA L. and VERA S. SORENSON FUND for the benefit of the Department of Geology at the State University of Iowa, with the principal and the income thereof to be used for the purpose of providing and maintaining a distinguished speakers program consisting of representatives from both academic and industrial sources. The designation of the purpose for which said fund is to be used shall not be construed as requiring its administration as a trust, the furnishing of bond or other security, or the making of periodic or other reports to any court, and said fund shall be devoted to the purposes herein stated as the Board of Directors of said FOUNDATION may from time to time determine.

Decedent executed her last will and testament on January 24, 1969, wherein under article VI she specifically declined to exercise the general power of appointment granted to her under her husband's will.[2] Prior to her death on February 22, 1974, she did not write any codicils to her will. Accordingly, as directed by Mr. Sorenson's will, upon Mrs. Sorenson's death all remaining property in the "Wife's Share" trust, valued at $142,949.06, was transferred and made a part of the "Charitable Share" trust, of which the State University of Iowa Foundation was trustee and beneficiary of the remainder interest. Decedent was at no time on or after October 9, 1972, under a mental disability that would have precluded her from republishing her will by codicil or otherwise.

On the estate tax return for decedent's estate, $119,807.90 was shown as decedent's total gross estate and $53,764.61 as the taxable estate. The value of the gross estate as shown did not include the $142,949.06 value of the assets in the "Wife's Share" trust under the Will of Ira L. Sorenson, or the $6,393.06 value of the amount of assets of the "Charitable Share" trust over which decedent held a power of appointment at the date of her death. Respondent, in his notice of deficiency, increased the value of the estate as reported by the $149,342.12 values at the date of

---

[2]                                         VI.

"I am the recipient of a general power of appointment contained in the Will of my husband, IRA L. SORENSON, executed on January 24th, 1969, which power of appointment I do hereby specifically decline to exercise."

decedent's death of the assets in the "Wife's Share" trust and the portion of the assets of the "Charitable Share" trust over which decedent held a power of appointment. In the petition, it is admitted that this $149,342.12 is properly includable in decedent's gross estate, but alleged that the estate is entitled to a charitable deduction under section 2055(a)(2) for the value of the charitable remainder in the assets which passed to the State University of Iowa Foundation from the "Wife's Share" trust computed under the provisions of section 20.2031–07 of the Estate Tax Regulations, which computation resulted in a claimed charitable deduction of $42,217.14. Petitioner does not claim any charitable deduction based on the inclusion in decedent's estate of the $6,393.06.

Section 2055(a)(2) provides for a deduction from a decedent's gross estate of charitable bequests. Section 2055(b)(1),[3] dealing with powers of appointment, states:

(b) POWERS OF APPOINTMENT.—

(1) GENERAL RULE.—Property includible in the decedent's gross estate under section 2041 (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.

The parties agree that under the provisions of section 2055(a)(2) and (b)(1), prior to the enactment of section 2055(e) by the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 549, 565, decedent's estate would have been entitled to a charitable deduction for the remainder interests in the "Wife's Share" trust passing to the State University of Iowa Foundation because of decedent's failure to exercise her power of appointment. However, section 2055(e), as amended by the Tax Reform Act of 1969, provides that no deduction under section 2055(a) shall be allowed for bequests of remainder interests to a charitable organization except under specified circumstances. Section 2055(e)(2), as amended, provides:

(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an individual portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's

---

[3]The Tax Reform Act of 1976 deleted sec. 2055(b)(2). This case specifically concerns sec. 2055(b)(1), preamendments of 1976, now labeled sec. 2055(b).

worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—

(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), * * *

The parties have stipulated that neither of the trusts created by Mr. Sorenson's will is a charitable remainder annuity trust nor a charitable remainder unitrust as described in section 664 nor a pooled income fund described in section 642(c)(5).[4] For this reason, the parties recognize that under the provisions of section 2055(e), as amended in 1969, the estate is not entitled to the charitable deduction claimed. However, petitioner contends that section 2055(e) is not applicable to property described in section 2055(b)(1). Petitioner further contends that because of the provisions of section 201(g)(4)(B)(ii), Pub. L. 91–172, limiting the application of section 2055(e), this section does not apply to decedent's estate. Section 201 (g)(4)(B), Pub. L. 91–172, provides that section 2055(e), as amended, is not applicable to a decedent dying after October 9, 1969, under certain circumstances, two of which are:

---

[4]This stipulation is clearly a correct interpretation of the statutes. Sec. 664 defines a charitable remainder annuity trust as one paying a sum certain (greater than or equal to 5 percent of the initial trust corpus) at least annually to one or more persons, at least one of which is not a charitable organization. The annual payment from the "Wife's Share" is not a sum certain. Sec. 1.664–2(a)(1), Income Tax Regs. Furthermore, Mrs. Sorenson had a right to invade the trust corpus, which under sec. 1.664–2(a)(4), Income Tax Regs., is fatal to a charitable remainder annuity trust. The "Charitable Share" allows for payment "up to but not exceeding a total in any one calendar year of * * * ($5,000.00), or * * * (5%) of the aggregate value of the entire assets of such trust fund in the year of such withdrawal, calculated on the lowest total value attained by such assets * * * at any time during such calendar year." The "Charitable Share" does not conform to the sum certain requirement for a charitable remainder annuity trust since the stated dollar amount is variable and the value expressed as a percentage is calculated without regard to a percentage of the initial net fair market value of the property in the trust. Sec. 1.664–2(a)(1), Income Tax Regs.

A charitable remainder unitrust is a trust from which an annuity, of a fixed percentage (greater than or equal to 5 percent) of the net fair market value of trust assets as revalued yearly, is paid no less than annually to one or more persons, at least one of which is not a charitable organization. Sec. 1.664–3(a)(1), Income Tax Regs. The "Wife's Share" trust is not a unitrust because it does not pay a fixed percentage yearly to the widow. The "Charitable Share" trust similarly is not a unitrust because it does not require a yearly payment of a fixed percentage.

A pooled income fund is a trust to which numerous donors transfer property, whereby an irrevocable remainder interest in such property is contributed to or for the use of a charitable organization. Sec. 642(c)(5), I.R.C. 1954. Neither the "Wife's Share" trust nor the "Charitable Share" trust can be deemed a pooled income fund since each had only one donor (sec. 1.642(c)–(5)(b)(3), Income Tax Regs.), and the remainder interests were not irrevocable. Sec. 1.642(c)–(5)(b)(1), Income Tax Regs.

(ii) if the decedent at no time after October 9, 1969, had the right to change the portions of the will which pertain to the passing of the property to, or for the use of, an organization described in section 2055(a), or

(iii) if the will is not republished by codicil or otherwise before October 9, 1972, and the decedent is on such date and at all times thereafter under a mental disability to republish the will by codicil or otherwise.

Petitioner argues that section 2055(b) was enacted to assist the taxpayer with a general power of appointment in obtaining a charitable deduction under section 2055(a). In other words, petitioner claims that the sole purpose of section 2055(b) is to permit an estate to take a charitable deduction and that it cannot be used to work to the detriment of an estate. To support this position, petitioner cites from *Estate of Lande v. Commissioner*, 21 T.C. 977, 989 (1954), stating that: "since the donee is to be treated as owner for the purpose of imposing tax, he will also be treated as owner for the purpose of determining charitable deductions."

We do not question that section 2055(b) must be read in conjunction with section 2055(a). We held so in *Estate of Pfeifer v. Commissioner*, 69 T.C. 294, 302 (1977):

Section 2055(b)(1) provides that property includable in the decedent's gross estate under section 2041 (relating to powers of appointment) shall "for purposes of this section, be considered a bequest of such decedent." In other words, if the holder of a testamentary power so exercises that power as to cause the property to pass to a charitable organization, the value of the property passing to the charity is "considered" to be such decedent's "bequest," and his estate is entitled to the charitable deduction. * * *

Section 2055(a) provides for the charitable deduction by estates, and section 2055(b)(1) merely provides that property includable in the estate because of being subject to a power of appointment is a bequest by the holder of the power. Therefore, to the extent section 2055(e) modified section 2055(a), it equally modified property includable in the estate under section 2055(b)(1).

Congress amended section 2055(e) in the Tax Reform Act of 1969 to reduce the scope of allowable charitable deductions because of abuse of the charitable deduction allowance. It was found that the charitable deductions allowed to certain estates because of a bequest of charitable remainder following life estates often exceeded the amount the charity ultimately received. S. Rept. 91–552 (1969), 1969–3 C.B. 423, 479, states:

The rules of present law for determining the amount of a charitable contribution deduction in the case of gifts of remainder interests in trust do not necessarily have any relation to the value of the benefit which the charity receives. This is because the trust assets may be invested in a manner so as to maximize the income interest with the result that there is little relation between the interest assumptions used in calculating present values and the amount received by the charity. For example, the trust corpus can be invested in high-income, high-risk assets. This enhances the value of the income interest but decreases the value of the charity's remainder interest.

Section 201(g)(4)(B) of the Tax Reform Act of 1969 was added to provide individuals an opportunity to modify existing arrangements and provide for those circumstances in which a charitable remainder created prior to the enactment of the Tax Reform Act of 1969 could not be changed. Hearings on H.R. 13270 before the Senate Comm. on Finance, 91st Cong., 1st Sess. 91 (1969). Otherwise, all estates were to be subject to the new provision. *Estate of Hoskins v. Commissioner*, 71 T.C. 379, 383 (1978).

By its terms, section 2055(e) applies to all subsections of section 2055. If Congress had intended that section 2055(e) not be interpreted as applying to section 2055(b), it would have specifically excluded its application to that subsection. Congress made no such modification in either section 2055(b) or section 2055(e). While not formally incorporated into the body of section 2055(e), section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 is a part of that subsection in that it specifies circumstances under which the section is applicable. It follows that section 201(g)(4)(B)(ii) also applies to property to which section 2055(b) is applicable.

Petitioner argues that the words of section 2055(b) must be given their plain meaning which is that property includable in a decedent's estate under section 2041 is considered a bequest of the decedent. Petitioner argues that for this reason, the time limitations of section 201(g)(4)(B) should not apply to property which is considered a bequest of a decedent under section 2055(b)(1) as long as the will creating the power met those limitations. Petitioner's position is based on *Estate of Pfeifer v. Commissioner, supra,* wherein decedent's will created a trust entitling his surviving wife to income for life with a testamentary power of appointment over the corpus. The surviving spouse,

who was 85 years old at decedent's death, executed, in compliance with section 2055(b)(2),[5] an affidavit declaring her intent to exercise her power of appointment in favor of a charitable organization. Decedent's wife died after exercising her power in her will. The issue to be decided was whether decedent's estate was entitled to a double deduction—a charitable deduction under section 2055(b)(2) and a marital deduction pursuant to section 2056(b)(5). In holding that decedent's estate was entitled to both deductions, the Court stated (69 T.C. at 299–300):

The problem is that the language of section 2055(b)(2) is explicit and clear and contains no ambiguities. The skimpy legislative history gives no clue indicating what tax or other policy the section was intended to achieve, such as the evil to be remedied, the object sought, and the relationship this section was intended to have to other provisions of the Code. * * * [Fn. ref. omitted.]

In reading the plain meaning of section 2055(b), and in particular "Property * * * shall, for purposes of this section, be considered a bequest of such decedent," it follows that all of section 2055 literally applies to section 2055(b). To otherwise interpret section 2055(b) would result in nullifying the effect of section 2055(e) as to property to which section 2055(b) is applicable, regardless of the facts otherwise present. This outcome when viewed in light of the purpose of section 2055(e) is not acceptable.

Petitioner alternatively argues that decedent does fall within

---

[5]Sec. 2055(b)(2) provides as follows:

(2) SPECIAL RULE FOR CERTAIN BEQUESTS SUBJECT TO POWER OF APPOINTMENT.—For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if—

(A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse;

(B) such surviving spouse was over 80 years of age at the date of the decedent's death;

(C) such surviving spouse by affidavit executed within 6 months after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive; and

(D) the power of appointment is exercised in favor of such organization and in the amounts or proportions specified in the affidavit required under subparagraph (C).

The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with.

the scope of section 201(b)(4)(B)(ii) (Tax Reform Act of 1969) and is therefore rescued from the negative effects of section 2055(e). Petitioner reasons that the language of section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 refers to the will of decedent's husband, Mr. Ira Sorenson. Relying upon the universally accepted principle that only a testator has the right to change his will, petitioner asserts that decedent therefore had absolutely no right to change her husband's will. As a result, it maintains that decedent's estate is not subject to the deduction disallowance provision of section 2055(e) as amended by the Tax Reform Act of 1969. Petitioner attempts to bolster its argument by citing the Senate Finance Committee report as an indication that Congress intended section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 to refer to the will of decedent's husband.[6]

Although respondent agrees that only a testator has the right to change his will, he asserts that Congress never intended section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 to apply literally to a will similar to that of decedent's husband, Mr. Ira Sorenson. Respondent proposes two interpretations of the meaning of section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 for the purpose of this case: that the provision either (1) refers to decedent's right to change her own will; or (2) refers to decedent's right to ultimately affect disposition of the assets of the "Wife's Share" trust bequeathed under Mr. Ira Sorenson's will, which property was subject to decedent's general power of appointment. In other words, under the latter construction, respondent urges that decedent's general power of appointment gave her the "right to change the portions of the will [of Ira Sorenson] which pertain to the passing of the property [the remainder interest]."

We cannot agree with respondent's first reading of section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969. The cornerstone of that interpretation would necessarily rely on a principle that a testator lacks the right to change his own will. Certainly,

---

[6]"In addition, the new rules are not to apply in the case of property passing under a will in existence on October 9, 1969, or property transferred in trust on or before that date, if the will or trust was not modified by the individual prior to October 9, 1972, and could not be modified thereafter by the decedent because he was under a mental disability on that date and at all times thereafter. It also is provided that the new rules are not to apply to property passing under a will in existence on October 9, 1969, where the individual did not have at any time thereafter the right to change the will as it relates to the charitable gift. [Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 549, 565, S. Rept. 91–552, pp. 1732–1733, 1969–3 C.B. 482.]"

Congress did not propose that result since a testator with capacity always has the right to modify his own will. Even in the event that one testator formally or informally agrees with another testator to include certain provisions in a will, well-settled law mandates that a testator with capacity later may change his will to delete or amend that provision. (E.g., *Pitt v. United States,* 319 F.2d 564 (8th Cir. 1963).) At most, the testator's subsequent modification would be merely a breach of contract, actionable at law.

Instead, in light of the purpose served by the 1969 amendments to section 2055(e), we interpret section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 to refer here to decedent's right to exercise her power of appointment which would directly "change the portions of the [Ira Sorenson] will which pertain to the passing of the property to, or for the use of, an organization described in section 2055(a)." As previously stated, the 1969 amendments were enacted to narrow the availability of charitable deductions to an estate. The effective date provision, section 201(g)(4)(B) of the Tax Reform Act of 1969, moderated the harshness of the deduction disallowance clause. Congress surely anticipated that if a person chose not to modify existing arrangements otherwise subject to section 2055(e)(2), then such person's estate would suffer the consequences of that decision. Here, decedent had 4 years (from December 30, 1969, the effective date of section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969, to January 24, 1974, date of death) to exercise her power of appointment and to place the assets in a trust qualifying for a charitable deduction. It was entirely decedent's choice to forego her opportunity to exercise her power of appointment. By so choosing, decedent freely refrained from exercising her "right to change the portions of the will which pertain to the passing of the [remainder interest]." Contrary to petitioner's argument, this Court's position is not injured by the Senate Finance Committee's statement that "the committee does not believe it is appropriate to make the new rules applicable to existing arrangements which were established under today's law and which *cannot be modified* to take the new rules into account." (Emphasis added.) S. Rept. 91–552 (1969), 1969–3 C.B. 482. As shown above, the facts certainly indicate that decedent's existing arrangements could have been altered. Thus, the new rules of section 2055(e) are applicable to decedent.

This decision does not contravene petitioner's point that it is the duty of courts to assure that a testator's wishes are upheld and enforced. Petitioner cites from *In re Nugen's Estate*, 223 Iowa 428, 434, 272 N.W. 638, 641 (1937), to emphasize this proposition:

> In passing on the questions thus raised, it will be well to keep in mind the suggestion of Gibson, C. J., in Bash v. Bash, 9 Pa. 260, that the courts have no more authority to make wills for the dead than contracts for the living, according to judicial notions of fitness and propriety, and also the statement of Ryan, C. J., in Dodge v. Williams, 46 Wis. 70, 1 N.W. 92, 50 N.W. 1103, that it is as much the duty of courts to uphold and enforce an individual's will after the death as to uphold and enforce his contracts made during life.

Petitioner's reliance on this well-accepted principle of law is misplaced in this case. In our view, our interpretation of section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 in no way hinders Mr. Sorenson's testamentary purpose. Mr. Sorenson specifically gave his wife a general power of appointment over the "Wife's Share" trust and a power of appointment over a portion of the "Charitable Share" trust assets. Upon execution of his will, Mr. Sorenson, without a doubt, knew that decedent had the ability to redirect the remainder interest to any person by exercising her general power of appointment. Indeed, it is our opinion that Mr. Sorenson anticipated that decedent would have a "right to change the portions of the will which pertain to the passing of the property" at issue.

Petitioner next seeks to persuade this Court that section 201(g)(4)(B)(ii) of the Tax Reform Act of 1969 should be interpreted in light of State law. Numerous Texas and Iowa cases are cited for the proposition that a remainderman, who is subject to a prior donee's power of appointment, takes directly from the creator of the power rather than from the donee-power holder.[7] Petitioner reasons that by applying State law, here the property in question would pass directly from Mr. Ira Sorenson to the charitable remainderman. That approach would render the disposition to the State University of Iowa Foundation as a pre-October 9, 1969, transfer, wholly exempt from the amendments of the Tax Reform Act of 1969. Respondent's objection to

---

[7] Petitioner relies on the following cases: *Bussing v. Hough*, 237 Iowa 194, 21 N.W.2d 587 (1946); *Crecelius v. Smith*, 255 Iowa 1249, 125 N.W.2d 786 (1964); *Grohn v. Marquardt*, 487 S.W.2d 214 (Tex. Civ. App. 1972); *In re Proestler's Will*, 232 Iowa 640, 5 N.W.2d 922 (1942); *Krausse v. Barton*, 430 S.W.2d 44 (Tex. Civ. App. 1968).

this position is well founded. As stated in *Helvering v. Stuart,* 317 U.S. 154, 161 (1942)—

The intention of Congress controls what law, Federal or state, is to be applied. * * * Since the Federal revenue laws are designed for a national scheme of taxation, their provisions are not to be deemed subject to state law "unless the language or necessary implication of the section involved" so requires. *United States v. Pelzer,* 312 U.S. 399, 402, 403, * * *

In *Helvering v. Stuart, supra,* a deficiency was determined against two brothers for failure to include in their tax returns income from several trusts which they previously had created for the benefit of their children. The trust instruments specified that Illinois law would govern. The taxpayers appointed themselves, amongst other family members, as trustees, and the trustees were given the power and authority of "absolute owners" over financial details. The Supreme Court used Illinois law to construe the meaning of paragraph 9 of the trust instrument itself. Specifically, State law was used to determine whether the instrument gave those trustees, who had no adverse relation to the settlors, powers to revest title to a portion of the corpus in the grantors or to distribute income to them. The Court concluded that under Illinois law, the trustees' authority as particularized in the trust instrument forbade disbursement of corpus or income to the grantors. That reading of the trust instruments was then applied to the pertinent tax law, sections 166 and 167, Revenue Act of 1934, 48 Stat. 680, concerning the taxability of grantor trusts.

By adopting the methodology of the Supreme Court, this Court should use State law only to interpret the terms of Mr. Sorenson's will, including the nature of decedent's power of appointment. The language of section 2055 neither implies nor requires more. Both petitioner and respondent have based their stances on the fact that Mr. Sorenson bequeathed assets in trust over which decedent had a general power of appointment. We previously have found here that decedent's "interest or right [general power of appointment] created by local law was the object to be taxed [and therefore] the Federal law [the Internal Revenue acts] must prevail no matter what name is given to the interest or right by state law." *Morgan v. Commissioner,* 309 U.S. 78, 81 (1940). Our decision effectuates the intent of Congress. Although Texas and Iowa law may propose that a remainderman subject to a power of appointment takes from the

donor rather than from the donee-power holder, estates of decedents administered under the laws of those States are subject to the "federal definition of taxability." *Helvering v. Stuart, supra* at 162.

In *Estate of Rogers v. Helvering,* 320 U.S. 410 (1943), the issue was the appropriate value of decedent's gross estate. Section 302 of the Revenue Act of 1926 provided that a decedent's gross estate shall include "the value at the time of his death of all property * * * (f) to the extent of any property passing under a general power of appointment exercised by the decedent (1) by will." In that case, Rogers, Sr., gave his son, Rogers, Jr., a general testamentary power of appointment over certain property, which, if not exercised, would cause the property to descend to Rogers, Jr.'s heirs, one-third going to each of Rogers, Jr.'s three heirs. Instead, however, Rogers, Jr., exercised the power. He gave to each heir 2 percent of the property outright, plus he put two-thirds of the residue in trust for two of the heirs with the remaining one-third interest to go to a son of Rogers, Jr.'s third heir. Rogers, Jr., subsequently died. Pursuant to section 302, Revenue Act of 1926, 44 Stat. 9, the Internal Revenue Service determined that decedent's gross estate included the entire disposition under the power of appointment. The Board of Tax Appeals reduced the gross estate as determined by respondent by excluding the property descending to Rogers, Jr.'s heirs since they received less than if decedent had failed to exercise his power of appointment. (Under the Revenue Act of 1926, decedent's failure to exercise his power would have caused the entire one-third interest of each heir to be excluded from decedent's estate.) The Supreme Court held that the entire amount was to be included in decedent's gross estate. Justice Frankfurter stated in *Estate of Rogers v. Helvering, supra* at 413–414:

That other values, whether worth more or less as to some of the beneficiaries, would have ripened into enjoyment if a testator had not exercised his privilege of transmitting property does not alter the fact that he and no one else did transmit property which it was his to do with as he willed. And that is precisely what the federal estate tax hits—an exercise of the privilege of directing the course of property after a man's death. Whether for purposes of local property law testamentary dominion over property is deemed a "special" or a "general" power of appointment. Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 855, 1035; whether local tax legislation deems the appointed interest to derive from the will of the donor or that of the donee of the power, Matter

of Duryea's Estate, 277 N.Y. 310, 14 N.E.2d 369, 124 A.L.R. 647; whether for some purposes in matters of local property law title is sometimes traced to the donee of a power and for other purposes to the donor, cf. Chanler v. Kelsey, 205 U.S. 466, 474, 27 S.Ct. 550, 552, 51 L.Ed. 882, are matters of complete indifference to the federal fisc.

Whether by a testamentary exercise of a general power of appointment property passed under sec. 302(f) is a question of federal law, once state law has made clear, as it has here, that the appointment had legal validity and brought into being new interests in property. See Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154. Were it not so, federal tax legislation would be the victim of conflicting state decisions on matters relating to local concerns and quite unrelated to the single uniform purpose of federal taxation. Lyeth v. Hoey, 305 U.S. 188, 191–194, 59 S.Ct. 155, 157–159, 83 L.Ed. 119, 119 A.L.R. 410. In taxing "property passing under a general power of appointment exercised * * * by will", Congress did not deal with recondite niceties of property law nor incorporate a crazy-quilt of local formalisms or historic survivals.

Here, section 2055(b) requires that we construe the bequest as having been derived from the power holder, decedent. Therefore, petitioner cannot circumvent the amendments to section 2055(e) made by the Tax Reform Act of 1969.

We have carefully considered the facts before us and find that as a result of her power of appointment decedent had the right to change the disposition of the assets of the "Wife's Share" trust. Because decedent consciously chose to refrain from exercising her power, the assets remaining in the "Wife's Share" trust flowed into the "Charitable Share" trust, a split-interest trust under section 2055(e)(2). Hence, decedent's estate is not entitled to a charitable deduction under section 2055. Because of our conclusion, it is unnecessary for us to address the question of the proper method for computing the claimed charitable deduction.

*Decision will be entered for the respondent.*